**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MICHAEL REDDEN, | : | CASE NO. 1:24-CV-00342 |
| Plaintiff, | : | JUDGE Matthew W. McFarland |
| v. | : | |
| TIM BAIRD, *et al.,* | : | **DEFENDANTS TIM BAIRD AND ROSS TOWNSHIP'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | : | |

Now come Defendants, Tim Baird and Ross Township ("Defendants"), by and through undersigned counsel, and hereby move this Honorable Court for an Order granting them summary judgment pursuant to Fed.R.Civ.P. 56. Defendants seek the requested Order because no genuine dispute of material fact remains as to Plaintiff's claim, thus, Defendants are entitled to judgment as a matter of law. Defendants' reasons for this Motion are set forth more fully in the accompanying Memorandum.

Respectfully submitted,

SURDYK, DOWD & TURNER CO., L.P.A.

*/s/ Dawn M. Frick*_____
Jeffrey C. Turner (0063154)
Dawn M. Frick (0069068)
Justin R. Marks (0103811)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333, (937) 222-1970 (fax)
jturner@sdtlawyers.com
dfrick@sdtlawyers.com
jmarks@sdtlawyers.com
*Trial Attorneys for Tim Baird and Ross Township*

1

**MEMORANDUM IN SUPPORT**

I. **STATEMENT OF THE CASE**

On July 7, 2023, Officer Tim Baird ("Baird") of the Ross Township Police Department ("Township") responded to the police department and met with Bridget Langen ("Langen") who reported domestic violence. (Doc. 16, PgID 89; 94). Langen stated that she was at 2043 Wagon Wheel Dr., Hamilton, OH 45013, to pick up her juvenile child from the child's father, Michael Redden ("Redden"). (Id., PgID 94). She stated that she had been in a relationship with Redden and that after ending their relationship she was allowing him to have time with their daughter. (Id., PgID 94).

Langen told Baird, while distraught and crying, that Redden stole her cell phone from the front seat of her vehicle while she placed the child in the vehicle. (Doc. 16, PgID 94-95). Accordingly, Langen pursued Redden in attempt to retrieve her phone. (Id., PgID 95). Meanwhile, Redden made derogatory comments towards her, told her that he was going to take her daughter away, and claimed the cell phone was his. (Id.). Redden's actions led Langen to seek assistance from the neighbors (Id., PgID 117-118). Langen could not call 911 because she needed her cell phone that Redden took from the vehicle (Id., PgID 95). Langen attempted to retrieve her phone by entering the rear patio door. (Id.). However, Plaintiff shoved her out of the doorway and slammed the door causing visible injury to her arm and leg, which Baird photographed. (Id, PgID 85; 95.).

Baird also spoke with Redden on the phone from the police department in the midst of investigating Langen's complaint, and as she completed her written statement. (Id., PgID 81; 88-89). After completing his investigation with Landen and obtaining her written statement, Baird responded to Redden's address to further investigate the incident and obtain Redden's version of

2

events. (Id., PgID 88-89). Redden's other daughter was also at the residence and provided Baird video clips of the incident. (Id., PgID 105). The video clips showed Langen running after Redden (Doc 16, PgID 112; 00:00-00:02), Langen asking for assistance from the neighbor (Doc. 16, PgID 114; 00:00-00:15), Langen attempting to retrieve her phone from Redden at the door of the residence (Doc. 16 PgID 123; 00:00-00:16); PgID 122; 00:00-01:00), Redden calling Langen a piece of shit (Doc. 16, PgID 118-119; 00:00-00:09), and Redden and Langen arguing while she yells for someone to call the cops. (Doc. 16, PgID 120; 00:00-01:07). The videos corroborated Langen's account of the incident including that Redden pushed her down, held her down, and called her a "piece of shit." (Doc. 16, PgID 127). Baird testified that he saw "Mr. Redden forcefully pushing Ms. Langen down on the ground, causing the subsequent scratch on her knee and the tearing of her pants," which corroborated Langen's statements. (Doc. 16., PgID 126; Doc. 16-5, generally). Based upon the evidence, Baird placed Redden under arrest for domestic violence and transported him to the Butler County Jail. (Doc 16., PgID 132).

Redden's testimony corroborates much of Baird's testimony. (See Doc. 18, generally). Indeed, he testified that he took the cell phone from the victim's car and that she chased him to retrieve it. (Doc. 18, PgID 444). Further, Redden testified that Langen sought assistance from the neighbor in calling 911 as she held the child and that he called her a piece of shit. (Id., PgID 499). Moreover, Redden admits to the altercation. (Id., PgID 500). Notably, this altercation occurred after Redden was inside the residence with the door locked and only occurred after he unlocked the door allowing Langen to attempt to enter to retrieve the phone to call police. (Id., PgID 450). When she did attempt to retrieve her phone, Redden physically obstructed her attempts, and Langden ended up on the ground. (Id., PgID 450; 454). During his confrontation, Redden alleges Langen pulled his television from the wall. (Doc. 18, PgID 466). Redden testified that he unlocked

the door to protect his family, despite his testimony that Langen was not violent towards them and he ran inside while leaving them outside with Langen. (Id. PgID 451-452). Undermining his instant claims, Redden further testified that Baird came to the home, interviewed him, spoke with Redden's daughter, and watched the videos taken of the incident prior to placing Redden under arrest. (Id., PgID 473-474; 507).

Subsequent to his arrest and bench trial, Redden was convicted of domestic violence in Hamilton Municipal Court case number CRB 2301790. He appealed. The 12th District Court of Appeals reversed the trial court's decision and held that the conviction *at trial* was not supported by sufficient evidence *State v. Redden*, 2024-Ohio-1088, ¶ 12 (12th Dist.). (Doc. 16-6). At no point does the opinion address or mention probable cause for the arrest. Id. What the opinion does refer to is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Id, PgID 213).

Accordingly, the difference between Redden's testimony and Baird's testimony is his belief that Langen – not him – should have been arrested. (Doc. 18, PgID 479). Indeed, the day his conviction was reversed he went to the police department to file charges against Langen. (Id., PgID 480). Therein, he alleges claims against Defendant Baird for alleged Fourth Amendment violations for false arrest and malicious prosecution against Baird, and a *Monell* claim against the Township for failure to train and supervise (See Doc. 1, Complaint, generally).

The facts of the case do not support Redden's claims. He relies on the fact that his conviction was reversed for insufficient evidence *at trial*. As demonstrated below, this basis is wholly sufficient to demonstrate a lack of probable cause at the time of arrest or prosecution for the same.

4

## II.    LAW AND ARGUMENT

### A. Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), quoting Fed.R.Civ.P. 56(e). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Here, Redden cannot identify a genuine dispute of material fact to overcome summary judgment. As shown below, the facts relevant to his claims include: 1) Baird arrested him with probable cause; 2) Redden was convicted; and 3) the Twelfth District overturned the conviction based only upon the evidence presented *at trial*. The facts do not plausibly indicate Fourth Amendment violations nor liability to the Township for failure to train on the same. Accordingly, this Court must enter a summary judgment for Defendants and dismiss Redden's claims with prejudice.

### B. Count I: Plaintiff's 42 U.S.C.§ 1983 false arrest and malicious prosecution claims.

    1. Plaintiff's false arrest claim fails as Officer Baird established probable cause via thorough investigation.

Plaintiff is unable to establish that Officer Baird lacked probable cause for his arrest. "To prevail on a false arrest claim under §1983, 'a plaintiff [must] prove that the arresting officer lacked probable cause to arrest the plaintiff.'" *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) quoting *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). "For probable cause to exist, "the facts and circumstances known to the officer" must be sufficient to lead a "prudent man" to believe an offense has been committed." *Novak v. City of Parma*, 33 F.4th 296, 304 (6th Cir. 2022) citing *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Probable cause is not a high bar. *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). Cause to arrest "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149, 92 S. Ct. 1921, 32 (1972).

Whether probable cause exists depends on the totality of the circumstances. *Day v. DeLong*, 358 F. Supp. 3d 687, 706 (S.D. Ohio 2019). Where probable cause does exist, it precludes a finding of an unlawful seizure. "A showing of 'probable cause provides a complete defense to a claim of false arrest," even if the officer's belief of probable cause was erroneous." *Wood v. Eubanks*, 25 F.4th 414, 421 (6th Cir. 2022) (citation omitted). Even more, "[a]n officer cannot be liable for a Fourth Amendment violation so long as there was probable cause to make an arrest for any offense, even if not on the offense charged by the officer." *Ellison v. Martin*, 2020 U.S. Dist. LEXIS 223539, *20 (S.D. Ohio); *Amis v. Twardesky*, 637 Fed. Appx. 859, 861 (6th Cir. 2015); *Wolfe v. Hocking Cnty. Sheriff's Dep't*, 2025 U.S. Dist. LEXIS 71921, *8-9 (S.D. Ohio). Further, if a court dismisses charges or an individual is later found innocent, it *does not* preclude a finding of probable cause. *Fisher v. Jordan*, 91 F.4th 419, 425 (6th Cir. 2024). Thus, "probable cause

6

depends on an evaluation of the events leading up to the arrest." *Id*. This precludes using after-the-fact knowledge to show a lack of probable cause (e.g. reversal of conviction does not negate probable cause). This means that the existence of probable cause is not gauged on 20/20 hindsight. *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 615 (6th Cir. 2007) (citation omitted). After all, "a conviction alone is sufficient to establish probable cause of a prosecution." *Dunn v. Tennessee*, 697 F.2d 121, 127 (6th Cir. 1982).

Furthermore, in weighing the existence of probable cause, an officer need not search the ends of the earth for exculpatory evidence. Once there is probable cause for arrest, "an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 637 (6th Cir. 2004) (citation omitted). Nor is an officer "obligat[ed]" to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest." *Id*.

Here, there is no doubt that Officer Baird arrested Redden and took him to jail. However, Redden attempts to demonstrate his claims by working backward from the time his conviction was reversed. This is contra to well-settled case law. Baird took a complaint at the police department from Langen who provided him a signed, *written statement* as part of his investigation and prior to his interaction with Redden. (Doc. 16, PgID 81; 88-89). At the same time, Baird observed injury to her arm and leg and that her pants were torn. Baird furthered the investigation at Redden's residence where he spoke with Redden, Redden's daughter, and reviewed videos recorded on his daughter's cell phone. Those videos depicted Redden running in the street, Redden and victim struggling at the doorway – with the victim on the ground –, and Langen seeking assistance from a neighbor because she could not call police since Redden took her cell phone. Videos and eyewitness identification constitute probable cause. See *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th

7

Cir. 1999). With this, and other evidence, Baird determined there was "a probability or substantial chance of criminal activity[.]" *Wesby*, supra. Accordingly, he arrested Redden for domestic violence.

Baird's arrest of Redden was not only justified, but the basis for arrest – apart from his further investigation (speaking with Plaintiff, Plaintiff's daughter, reviewing video) – is enshrined in Ohio law:

> A peace officer "has reasonable grounds to believe that the offense of domestic violence . . . has been committed and reasonable cause to believe that a particular person is guilty of committing the offense if any of the following occurs:
>
> A person executes a written statement alleging that the person in question has committed the offense of domestic violence[.]

R.C. § 2935.03(B)(3)(a)(i). "[R]easonable grounds and reasonable cause under R.C. 2935.03 equate to probable cause[.]" *State v. Gipp*, 2024-Ohio-1076, ¶ 29 (2nd Dist.). To require further investigation would ignore "the preferred course of action" under R.C. § 2935.03(B)(3)(b). *Id*. See also *State v. O'Neill*, 2015-Ohio-815, fn. 2 (3rd Dist.)(Written statement alone constitutes reasonable grounds.); *White v. Roch*, 2005-Ohio-1127, ¶ 17 (9th Dist.)(Written statement provides officers probable cause to arrest for domestic violence.); *Sheets v. Mullins*, 109 F. Supp. 2d 879, 891 (S.D. Ohio 2000) (A written statement of domestic violence victim authorizes immediate arrest.)(negative treatment on other grounds.); *Bringman v. Fredericktown*, 2016 U.S. Dist. LEXIS 142173, *13 (S.D. Ohio)(victim's statement alleging abuse sufficient to establish probable cause); See also *State v. Lampe*, 2003-Ohio-3059, ¶ 14 (1st Dist.); *State v. Miller*, 91 Ohio App. 3d 270, 275 (3rd Dist. 1993).

Thus, Plaintiff's allegations of an "incomplete investigation" (Doc. 1, PgID 4, ¶ 24(c)) are meritless and cut against the facts, Ohio law and law recognized by this Court. The victim's statement provided probable cause at the police department. Notwithstanding, Baird exercised due

8

diligence to investigate further at the scene. This is further than what Ohio requires and even he sought out "additional evidence which may exculpate the accused," *Williams*, supra, by speaking with Redden's daughter and watching video recordings. Finding none, he arrested Redden for the accusations relayed to him at the police department, including those contained in Langen's written statement: that she was a victim of domestic violence and Redden was the suspect.

Ignoring this, Redden clings to the Twelfth District's decision as a basis for his Complaint. This does not pass muster. Apart from Baird having probable cause at the time of arrest, the State, by way of a prosecuting attorney, determined there was evidence-based probable cause to prosecute Redden to the extent that the evidence could lead to conviction requiring belief *beyond a reasonable doubt* by the trier of fact. (Doc 16-6, PgID 211). In this case, the judge found that Redden committed the crime charged. (Id., PgID 212). The Twelfth District's reversal was based upon evidence presented *at trial*, not about probable cause at the scene, and obviously made no mention of R.C. § 2935.03(B)(3)(a)(i), which inherently provided Baird with such cause to arrest. Redden's Complaint, contra law, inherently requires heavily denounced 20/20 hindsight, see *Radvansky*, supra, and ignorance of the Ohio Revised Code. It requires ignorance that a later-found "innocence" does not prove a lack of probable cause, *Fisher*, supra. And most importantly, Plaintiff's claims require ignorance of Baird's knowledge of the totality of the circumstances on July 7, 2023.

If the foregoing is not enough, Redden's justification for domestic violence undermines his own claims. Redden alludes to the defense of his home and property as a valid affirmative defense to engage in his clash with Langen. (Doc. 1, PgID 4). The defense of home and property and self-defense are related. *State v. Perez*, 2010-Ohio-3168, ¶ 11 (7th Dist.) citing *State v. Martin*, 21 Ohio St.3d 91, 21 Ohio B. 386, 488 N.E.2d 166 (1986). In Ohio, a self-defense claim "is an admission

9

of all essential elements of the charged crime, but with the legal recognition that the accused's actions were justified under the circumstances." *State v. Loyed*, 2004-Ohio-3961, ¶ 32 (8th Dist.). A defendant "concedes he had the purpose to commit the act, but asserts that he was justified in his actions.'" *State v. Davis*, 2021-Ohio-2311, ¶ 38 (8th Dist.) (citation omitted). Self-defense "presumes intentional, willful use of force to repel force or escape force." *State v. Champion*, 109 Ohio St.281, 286-287, 142 N.E. 141 (1924). Ohio courts have recognized that "[b]ecause self-defense presumes an intentional, willful use of force, 'when an individual testifies that they did not intend to cause harm, such testimony prevents the individual from claiming self-defense.'" *State v. Grayson*, 2021-Ohio-4312, ¶ 25 (8th Dist.) quoting *Davis*, supra, at ¶ 38. See also *State v. Hubbard*, 2013-Ohio-2735, ¶ 54 (10th Dist.) ("Defendant's testimony that he did not fire his gun with the intention of harming anyone prevented defendant from claiming that he shot his gun in an attempt to repel force with force").

The Twelfth District in this case opined that Redden's "physical contact" with Langen was "solely motivated by his need to keep Langen out of the house." (Doc. 16-6, PgID 215). This comports, in part, with the allegation in Redden's complaint of a "scuffle inside the house, [and] Redden held Langen in a bear hug to prevent her from swinging at him or breaking things." (Doc 1, PgID 3). It is counterintuitive and untenable to assert that there was a lack of evidence for probable cause to arrest for domestic violence while Plaintiff has adopted self-defense implying admittance to violence.

Baird had probable cause to arrest Redden, and that arrest comported with the law. Moreover, Redden undermines his own claim by impliedly admitting to the charge against him. As such, this claim must fail.

2. <u>Plaintiff's malicious prosecution claim fails as the existence of probable cause negates the same.</u>

Plaintiff's malicious prosecution claim likewise fails as it wholly unsupported by facts and law. "To succeed on a malicious prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (internal quotation marks omitted). "Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution." *Id*. "Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Id*. at 308-309 (internal quotation marks omitted). "Fourth, the criminal proceeding must have been resolved in the plaintiff's favor." *Id*. at 309. Here, the first and second elements weigh in favor of Defendants.

As to the first element, when evaluating an arresting officer's culpability in a malicious prosecution "there must be some element of blameworthiness or culpability in the participation," because "truthful participation in the prosecution is not actionable." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) citing *Sykes*, supra, at 314. A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment "only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014). An action for damages under 42 U.S.C.§ 1983 based on a claim of malicious prosecution is properly dismissed when the plaintiff fails to show that *all* the elements of the charge under state law are present. *Coogan v. Wixom*, 820 F.2d 170, 174 (6th Cir. 1987).

11

In order to establish a claim of malicious prosecution, an officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating[.]" *Sykes v. Anderson*, 625 F.3d 294, fn.5 (6th Cir. 2010). For example, providing testimony at a bindover (probable cause hearing) may amount to sufficient "participation" in deciding to prosecute. *Coffey v. Carroll*, 933 F.3d 577, 590 (6th Cir. 2019). Here, Office Baird took a report and sent it to the prosecutor's office for misdemeanor charges. There was no bindover hearing, and it was the prosecutor's (attorney's) decision to prosecute. Moreover, Plaintiff's own version of the event at issue comports with the information contained in the report to the prosecutor. Nothing in the record indicates Officer Baird did anything other than the initial paperwork and subsequently testify at trial after the prosecutor's decision. This does not equate to active involvement.

But even if it did, Plaintiff cannot demonstrate the lack of probable cause. Doing so would require a conscious abandonment of R.C. § 2935.03(B)(3) (written statement of victim provides probable cause) and Officer Baird's continued fact-gathering at the scene. And it would disregard that convictions constitute probable cause, *Dunn*, supra, and that a reversal of the same does not abrogate it, *Fisher*, supra. Therefore, Plaintiff's malicious prosecution claim must fail.

### C. Count II: Plaintiff's *Monell* claim fails as there are no underlying constitutional violations.

Plaintiff's *Monell* claim rises and falls with the foregoing. Accordingly, this claim fails like the above. A municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words, 'solely because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-389 (6th Cir. 2014) quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382 (1997)). A plaintiff does this by showing

12

that the municipality had a "policy or custom" that caused the violation of his rights. *Monell*, 436 U.S. at 694.

There are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.*" Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citing *Burgess v. Fischer*, 735 F.3d at 478 (6th Cir. 2013). Here, Plaintiff argues municipal liability under three of the four methods: (1) the existence of an illegal official policy or legislative enactment, (3) the existence of a policy of inadequate training or supervision, and (4) the existence of a custom of tolerance or acquiescence of federal rights violations. (Doc 1, PgID 6-7).

Under the first theory, Plaintiff must demonstrate there were "formal rules or understandings—often but not always committed to writing—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292 (1986). A plaintiff must show the existence of a policy, connect that policy to the municipality, and demonstrate that the injury was caused by the execution of that policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). He must "point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation." *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 694). Plaintiff has not pointed to a single policy that caused a violation of his rights. In fact, the record demonstrates the opposite. Officer Baird investigated the offense alleged to the extent able under the police department's policy, and that investigation exceeded that required by Ohio law to establish probable cause. The absurdity that an officer

13

exceeding State law requirements implies a policy causing a constitutional violation is self-evident.

As is Plaintiff's allegation of the failure to train. "When determining whether a municipality has adequately trained its employees, 'the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). A failure-to-supervise claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess*, 735 F.3d at 478. A failure-to-train claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). Here, Plaintiff alleges only one instance of a constitutional violation(s) – his arrest and subsequent prosecution, which is not indicative of a history of abuse. Moreover, he cannot point to any evidence in the record of any other violations. And as the record reflects, Officer Baird's actions demonstrate appropriate actions in-line with departmental policy but more importantly with Ohio law. His actions and decisions demonstrate appropriate training that established probable cause for Plaintiff's arrest.

Similarly, a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims. See *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989). Again, Plaintiff cites his own case as evidence of a pattern, which is no pattern at all, and alleges no similar claims. Prevailing on this claim in the instant case would require he argue that a municipality is liable under this prong for failing to adequately investigate similar instances where the officer followed

the law. There is no evidence to support Plaintiff's claim.

Plaintiff's *Monell* claim unsurprisingly fails. He fails to demonstrate any underlying claim to buttress the instant, but, even if he did, he alleges only one instance – his – in support. In either case, the record is absent of facts to demonstrate any *Monell* liability. Illegality cannot exist where the law is followed.

### D. Qualified Immunity

Defendant Baird is entitled to qualified immunity. Qualified immunity not only shields individuals from liability, but also against the suit itself. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir.2012). The doctrine of qualified immunity is intended to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"Officers are entitled to qualified immunity unless they (1) violate a constitutional right (2) that was "clearly established" at the time of the wrongdoing." *Bell v. City of S.field*, 37 F.4th 362, 367 (6th Cir. 2022) (citation omitted). Clearly established means that if a right was violated it "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation omitted). Qualified immunity stands so long as the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Raimey v. City of Niles*, 77 F.4th 441, 448 (6th Cir. 2023). It is a plaintiff's burden to show that an officer is not entitled to qualified immunity. *Rucinski v. Cnty. of Oakland*, 655 Fed. Appx. 338, 341 (6th Cir. 2016). "A police officer is not liable unless relevant caselaw gave the officers "fair notice" that their [action] was unconstitutional." *Gambrel v. Knox Cty.*, 25 F.4th 391, 400 (6th Cir. 2022) citing *Rivas-*

*Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). Fair notice means a plaintiff "must identify a case with a similar fact pattern" to give an officer a warning of what the law requires. *Beck v. Hamblen Cty.*, 969 F.3d 592, 600 (6th Cir. 2020). The plaintiff must "identify 'a high 'degree of specificity' the legal rule that a government official allegedly violated.'" *Id*. at 599 citing *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

To the extent Plaintiff alleges Baird committed policy violations, they would not abrogate immunity. "[T]he fact that an officer's conduct merely violates a departmental policy does not cause that officer to lose their qualified immunity." *Latits v. Phillips*, 878 F.3d 541, 553 (6th Cir. 2017)(citation omitted). It must have been clearly established that the conduct at issue violates the Constitution, not internal policies. *Id*. Here, Plaintiff's Complaint alleges general violations of policy. But discovery reveals Plaintiff takes issue because Redden did not obtain video or audio of the parties' apart from videos provided by Plaintiff's daughter. (Doc. 16, PgID 106).

However, Baird was not issued a video or audio recording device. Id. Plaintiff also takes issue because Baird did not obtain a criminal history report ("CCH") in his consideration of whom to arrest for domestic violence. (Id., PgID 134-135). But in any case, this has no impact on Plaintiff's claims. Defendants find no case law that a domestic violence suspect has a right to be recorded or that any history of domestic violence be ascertained before their arrest. Moreover, the department's policy – as read verbatim during deposition states: "Officers should take appropriate enforcement action when there is probable cause to believe an offense has occurred." (Id., PgID 69; Doc. 16-2, PgID 189). The policy further states, "An officer who has reasonable grounds to believe that a person has committed the offense of domestic violence or a violation of a protection order should arrest and detain that person." (Id., PgID 70; Doc. 16-2, PgID 192). Defendant testified he understood that. (Id.) Accordingly, to Ohio law, a written statement provides probable

16

cause to arrest for domestic violence, and the preferred course of action is to arrest. R.C. § 2935.03(B)(3)(a)(i); R.C. § 2935.03(B)(3)(b). Accordingly, Defendant followed the law and policy as it relates to a domestic violence arrest. The lack of a camera or criminal history would change neither.

As shown above, Plaintiff cannot prove a violation of a well-established constitutional right, let alone the violation of a constitutional right at all. To do so, he must have demonstrate that Officer Baird did not have probable cause to arrest him. This requires Plaintiff demonstrate that probable cause does not exist when an officer investigates a crime of domestic violence and observing the victim's injuries, obtaining the victim's voluntary and statutorily prescribed probable-cause enabling statement, interviewing the suspect and eyewitness, and watching video footage of the victim seeking assistance from the neighbor because the suspect admittedly took her cell phone. Simplified, Plaintiff must demonstrate that Officer Baird broke the law by following the law. By implication, Plaintiff must demonstrate he possessed a clearly established right for Officer Baird not to follow the law when there is probable cause to arrest him. Qualified immunity and common sense do not support this.

## III.  CONCLUSION

Based upon the foregoing, Defendants Tim Baird and Ross Township respectfully request that this Court grant them summary judgment as to all claims against them.

        Respectfully submitted,

        SURDYK, DOWD & TURNER CO., L.P.A.

        */s/ Dawn M. Frick*_____
        Dawn M. Frick (0069068)
        Jeffrey C. Turner (0063154)
        Justin R. Marks (0103811)
        8163 Old Yankee Street, Suite C
        Dayton, Ohio 45458
        (937) 222-2333, (937) 222-1970 (fax)
        jturner@sdtlawyers.com
        dfrick@sdtlawyers.com
        jmarks@sdtlawyers.com
        *Trial Attorneys for Tim Baird and Ross Township*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on September 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, a copy of which will automatically be forwarded to the parties or their counsel of record:

    Jim Hardin
    Joshua Adam Engel
    Engel and Martin, LLC
    4660 Duke Dr., Suite 101
    Mason, OH 45040
    engel@engelandmartin.com
    *Attorneys for Plaintiff*

        */s/Dawn M. Frick*_____
        Dawn M. Frick (0069068)