# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

MICHAEL REDDEN,

Plaintiff,

v.

TIM BAIRD, et al.,

Defendants.

CASE NO. 1:24-CV-00342

JUDGE Matthew W. McFarland

RESPONSE TO MOTION FOR
SUMMARY JUDGMENT

Plaintiff Michael Redden respectfully submits this Response to Defendants' Motion for Summary Judgment.  (Doc#19.)

Viewing the record in the light most favorable to Plaintiff, there is enough of a factual dispute that a jury could find that Plaintiff was arrested and thrown in jail when the responding officer, Defendant Baird, turned a blind eye toward potentially exculpatory evidence in his possession.  As such, there is a genuine dispute of material fact as to whether Baird's actions violated Redden's constitutional right to not be arrested in the absence of probable cause that he committed a crime. Nor is qualified immunity available; the Sixth Circuit has long held that an "officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence" when deciding whether probable cause exists for an arrest. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Accordingly, Plaintiff must be permitted to proceed in this matter.

**TABLE OF CONTENTS**

FACTS ........................................................................................................................................... 1

ARGUMENT ................................................................................................................................. 4

    A.    Standards ................................................................................................................ 4

        1.    Summary Judgment .................................................................................... 4

        2.    Qualified Immunity .................................................................................... 5

    B.    Plaintiff Has Sufficient Evidence To Proceed On His 1983 Claim Against Baird ............. 6

        1.    Standard: Probable Cause Requires An Officer To Consider All Available
Evidence .................................................................................................. 6

        2.    Officer Baird Lacked Probable Cause To Arrest Plaintiff. ........................... 7

            a.    Baird Failed To Consider The Totality Of The Circumstances,
Including Both The Inculpatory And Exculpatory Evidence, Before
Determining If He Had Probable Cause To Make An Arrest ........................ 7

            b.    Defendants' Arguments Are Unavailing ............................................. 12

    C.    Plaintiff Has Sufficient Evidence Proceed On His Failure To Supervise Claim ................ 18

    D.    Officer Baird Is Not Entitled To Qualified Immunity ..................................... 19

CONCLUSION ............................................................................................................................ 20

## TABLE OF AUTHORITIES

*Ahlers v. Schebil*, 188 F.3d 365 (6th Cir. 1999) ........................................................................ 6, 7, 8

*Anaya v. Crossroads Managed Care Sys.*, 195 F.3d 584 (10th Cir. 1999) ........................................ 15

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................................... 5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................... 4

*Ashcroft v. Abdullah Al-Kidd*, 563 U.S. 731 (2011) ....................................................................... 5

*Bailey v. United States*, 568 U.S. 186 (2013) .................................................................................. 6

*Bringman v. Fredericktown*, S.D.Ohio No. 2:15-cv-628, 2016 U.S. Dist. LEXIS 142173 (Oct. 13, 2016) ............................................................................................................................... 15

*CareToLive v. Eschenbach*, 525 F. Supp. 2d 952 (S.D.Ohio 2007) ................................................. 6

*Caskey v. Fenton*, 6th Cir. No. 22-3100, 2022 U.S. App. LEXIS 31750 (Nov. 16, 2022) ............... 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................ 4

*City of Canton v. Harris*, 489 U.S. 378 (1989) ............................................................................. 18

*Cooper v. California*, 386 U.S. 58 (1967) ..................................................................................... 15

*Crockett v. Cumberland College*, 316 F.3d 571 (6th Cir. 2003) ...................................................... 7

*Denton v. Rievley*, E.D.Tenn. No. 1:07-CV-211, 2008 U.S. Dist. LEXIS 60280 (July 21, 2008) ..... 14

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690 (6th Cir. 2006) ..................... 18

*Franklin v. Miami Univ.*, 214 F.App'x 509 (6th Cir. 2007) ............................................................. 7

*Fridley v. Horrighs*, 291 F.3d 867 (6th Cir. 2002) ........................................................................ 16

*Frodge v. City of Newport*, 501 F.App'x 519 (6th Cir. 2012) ......................................................... 16

*Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000) ....................................................... 1, 8, 9, 20

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .................................................................................... 5

*Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008) ........................................................................ 9

*Harris v. City of Saginaw*, 62 F.4th 1028 (6th Cir.2023) ............................................................... 8

*Howell v. NaphCare, Inc.*, 67 F.4th 302 (6th Cir. 2023) ................................................................ 18

*Israel v. City of New York*, S.D.N.Y. No. 16-cv-6809, 2018 U.S. Dist. LEXIS 241008 (Sept. 29, 2018) ............................................................................................................................... 17

*Kinkus v. Village of Yorkville*, 289 F.App'x 86 (6th Cir. 2008) ..................................................... 17

*Klein v. Long*, 275 F.3d 544, 551 (6th Cir. 2001) ......................................................................... 8

*Logsdon v. Hains*, 492 F.3d 334 (6th Cir.2007) .......................................................................... 20

*Marriott v. Persing*, 6th Cir. No. 23-3620, 2024 U.S. App. LEXIS 5964 (Mar. 11, 2024) ............... 9

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .................................................................... 18

*Newman v. Twp. of Hamburg*, 773 F.3d 769 (6th Cir. 2014) ........................................................... 17

*Novak v. City of Parma*, 33 F.4th 296 (6th Cir. 2022) ..................................................................... 17

*Ouza v. City of Dearborn Hts.*, 969 F.3d 265 (6th Cir. 2020) ....................................................19, 20

*Parsons v. City of Pontiac*, 533 F.3d 492 (6th Cir. 2008) ................................................................ 9

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...................................................................................... 5

*Provience v. City of Detroit*, 529 F.App'x 661 (6th Cir. 2013) ........................................................ 7

*Pyles v. Raisor*, 60 F.3d 1211 (6th Cir. 1995) ................................................................................. 7

*Sanders v. Det. Police Dept.*, E.D.Mich. No. 07-14206, 2016 U.S. Dist. LEXIS 2040 (Jan. 7, 2016) .................................................................................................................................. 15

*Santiago v. City of Yonkers*, S.D.N.Y. No. 21 Civ. 764, 2023 U.S. Dist. LEXIS 51961 (Mar. 27, 2023) ................................................................................................................................. 17

*Sheets v. Mullins*, 109 F.Supp.2d 879 (S.D.Ohio 2000) ................................................................. 15

*Stacey v. Emery*, 97 U.S. 642 (1878) ............................................................................................... 14

*State v. Gipp*, 2024-Ohio-1076 (2nd Dist.) ..................................................................................... 15

*State v. Lampe*, 2003-Ohio-3059 (1st Dist.) .......................................................................... 13, 14, 15

*State v. Miller*, 91 Ohio App. 3d 270 (3rd Dist. 1993) .................................................................... 15

*State v. Murta*, 1980 Ohio App. LEXIS 10079 (4th Dist. Aug. 6, 1980) ........................................ 13

*State v. O'Neill*, 2015-Ohio-815 (3rd Dist.) .................................................................................... 15

*State v. Redden*, 2024-Ohio-1088 (12th Dist.) ...........................................................................3, 12

*State v. Steele*, 2013-Ohio-2470 ....................................................................................................... 14

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) ............................................................................ 17

*Thacker v. City of Columbus*, 328 F.3d 244 (6th Cir. 2003) ........................................................8, 14

*United States v. Mendenhall*, 446 U.S. 544 (1980) .......................................................................... 6

*White v. Roch*, 2005-Ohio-1127 (9th Dist.) .................................................................................... 15

Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d* (1998) ........................................ 5

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ............................................................................................ 15

iv

**FACTS**

Plaintiff is a private citizen. Defendant Baird is a police officer with Defendant Ross Township. Redden was arrested by Baird and charged with domestic violence – a crime Baird knew, or should have known, he did not commit.

The events leading to this lawsuit occurred on July 7, 2023. Redden and the alleged victim, Bridget Langen, are the unmarried parents of a young child. On that day, Redden was sitting in his backyard discussing a possible trip to Florida. Langen got upset with the conversation, "got mad," and started to leave with their child. (Redden Depo. Doc.18, PageID#437.) Redden followed her and asked for this phone back. (*Id.*) While Langen was putting the child into the passenger side of the car, Redden leaned into the open driver-side door and took his cellphone that Langen had been using.[1] (Redden Depo. Doc.18, PageID#441-442 ("The phone was on the driver's seat. That's where I got the phone from.").

Langen chased Redden around the yard. She testified at trial, "I just got so upset that I got out and was like chasing him trying to get [the phone]." (Trial, Doc.21-1, PageID#719.) Langen tore Redden's outdoor television from the patio wall and tried to force her way inside Redden's house. (Redden Depo. Doc.18, PageID#445-445; Trial Tr. at 28.) Redden testified:

> … she was always trying to push her way into the house. The only way she wasn't trying to push into the house is when she was banging and smashing on the door with her fist. She wasn't doing it with her closed fist. She was doing it with her -- just smashing that window. And I really thought she was going to break the window at one point.

---

[1] Defendants state that Redden "took her cell phone." Def. Memo. at PageID#554. *See also* Def. Memo. at PageID#553. This is not accurate. The cellphone belonged to Redden. He explained:

> I purchased a phone with service for Bridget to use to stay in contact with me and my children and all that, but Bridget broke the first phone so I had to supply her a second phone which was my personal phone. So the phone that I was asking Bridget back for since she left the house was mine. I paid for it, and it was mine, so it was my property

(Redden Depo. Doc.18, PageID#437.)

(Redden Depo. Doc.18, PageID#455.)  Redden held Langen in a bear hug to prevent her from swinging at him or breaking things.  Langen bit and punched Redden.  Redden described the scene in his deposition:

> …at one point I had her in a bear hold so she couldn't go anywhere. I was just keeping her out of the house. I'm pretty much holding the door, and I'm probably doing this. I mean, there was no -- all I did was try to keep her out of my home….
>
> So if I had her in a bear hug – so if I have her in a bear hug, that's how it's taking place. Like I'm trying to just hold her so she's – I have her arm so she can't swing. I don't know what else happened. Like nothing else happened. All I'm trying to do is keep her out of my house. I'm trying to hold her back. I don't even -- I don't even use my hands to do it.  Like I'm holding her into the doorway.  Like I have ahold of the glass. I'm just kind of recalling it. I had ahold of the door and the wall at the same time. I lost control when she's forcing her way in, so it was just me wrapping my arms around her on the floor is all I remember…

(Redden Depo. Doc.18, PageID#453.)  Langen eventually left the home on her own.  Redden called 911 to report the incident.   (CAD Report, Doc.16-4, PageID#202; Redden Depo., Doc.18; PageID#740.) Langen went to the Ross Township Police Station and spoke to Officer Baird.  (CAD Report, Doc.16-4, PageID#202; Police Report, Doc.16-5, PageID#203; Baird Depo., Doc.16, PageID#78-79.)

At the police station Langen told Baird a number of statements that later turned out to be untrue: Redden had stolen her cell phone; Redden had slammed the door on her and shoved her out of the doorway; Langen had suffered injuries to her knee and legs as a result of Redden's conduct. (Police Report, Doc.16-5, PageID#203.)   Officer Baird met with Langen for a few moments and obtained a short written statement.  (Police Report, Doc.16-5, PageID#208.)  It was clear that after speaking to Langen, Baird believed the first story he heard.[2]  He seemed to believe that Redden was likely the primary aggressor and that Langen was the victim.  Baird requested a background check on

---

[2] Baird had what is referred to in investigations as "conformation bias" or "tunnel vision" – a tendency for people to receive information, get locked into a viewpoint, and process additional information in a way that confirms their current preconceptions, attitudes and beliefs.  (Rogers Depo., Doc.17, PageID#240-241.)

Redden "for prior DV arrests and/or arrest involving -- like violent arrest, assault, et cetera" but did not request any background information Langen. Baird Depo., Doc.16, PageID#86.) However, Baird had not decided to arrest Redden based solely on Langen's statement. He explained that he went to Redden's home "to investigate. I had her story. I needed to get his story." (Baird Depo., Doc.16, PageID#88.) Baird went to the scene and interviewed Redden. Redden told him that he had given the phone to Langen so he could speak to their child. Baird observed a scratch on Redden's elbow and a bite mark. Baird never obtain written or recorded statements from Redden and any witnesses. (Baird Depo., Doc.16, PageID#105-107.)

Most importantly – and the reason we are here -- Baird obtained video of the incident.[3] Baird testified at his deposition that he believed the video "showed that Mr. Redden was forcefully holding [Langen] down on the ground, which caused the scrape to the knee as well as the injury to her arm." (Baird Depo., Doc.16, PageID#135.) In fact, the video exonerates Redden and Baird's self-serving characterization is not supported by the record. The Court should not take Counsel's word for this; here is how the Twelfth District Court of Appeals characterized the video:

> Langen repeatedly tried to push her way inside the house, eventually becoming successful, while Redden tried to keep her out. A video recording of a portion of the incident shows Langen trying to crawl sideways inside the house past Redden as the sliding door is partially open and Redden is standing in the doorway… Langen sustained bruises on the back of her leg and the bruise and scrape on her right arm during the parties' scuffle at the sliding glass door when she was trying to force her way inside the house and Redden was trying to keep her out of the house and close the door.

*State v. Redden*, 2024-Ohio-1088, ¶ 12 (12th Dist.). Accordingly, the video in Baird's possession clearly showed that Langen was the primary aggressor and that Redden came into physical contact with Langen when she tried to push her way inside the house and he tried to block her from entering the

---

[3]   The videos were filed with the Court, but for convenience are available here: https://drive.google.com/drive/folders/1IE8vTcxkHBIg8bo957bSkQiEFCr5-yH5?usp=sharing

house and close the door. The evidence in Baird's possession also clearly showed that, in the words of the Twelfth District, "Redden's only intent on the day of the incident was to keep a determined and angry Langen from entering the house, and once inside, to prevent her from breaking things or hitting him." 2024-Ohio-1088, ¶ 14.

Redden was arrested and spent four days in jail. (Redden Depo., Doc.18, PageID#486.) A magistrate/acting judge in the Hamilton Municipal Court found Redden guilty of domestic violence and sentenced him to 30 days in jail with 23 days suspended and credit for 3 days served, two years of community control, anger management and domestic violence classes, and no contact with Langen. The Twelfth District Court of Appeals reversed the conviction, holding that the State had not presented sufficient evidence from which a trier of fact could find that Redden had committed domestic violence.

This litigation followed.

## ARGUMENT

### A. Standards

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477

U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d* § 2726 (1998).

### 2. Qualified Immunity

The qualified-immunity doctrine protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 55 U.S. at 231. The Court conducts a two-step inquiry when considering a claim for qualified immunity. At the first step, the court asks whether the facts viewed in the light most favorable to the plaintiff show that the officer has violated the plaintiffs constitutional right. At the second step, the court asks whether the right was clearly established at the time of the violation. *Pearson*, 555 U.S. at 232).

Whether the law was clearly established is evaluated at the time of the challenged conduct. *Ashcroft v. Abdullah Al-Kidd*, 563 U.S. 731, 741 (2011). In deciding whether the right was clearly established, the Supreme Court has cautioned lower courts "not to define clearly established law at a high level of generality." *Abdullah Al-Kidd*, 563 U.S. at 742. Exact precedent, however, is not the standard under which Defendant's actions are analyzed; rather, it simply "must be apparent" to the Defendant that his conduct was unlawful when "viewed in the light of pre-existing law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This Court has explained that a right is clearly established if

the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violated that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been unlawful; but it is to say that in the light of pre-existing law the unlawfulness is apparent.

*CareToLive v. Eschenbach*, 525 F. Supp. 2d 952, 963 (S.D.Ohio 2007).

**B.     Plaintiff Has Sufficient Evidence To Proceed On His 1983 Claim Against Baird**

The Fourth Amendment prohibits unreasonable seizures by police officers. Plaintiff asserts that his Fourth Amendment rights were violated in two ways: (i) he was subjected to a warrantless arrest where there is not probable cause to believe that a criminal offense has been or is being committed; and (2) he was subjected to a malicious prosecution based on wrongful investigation, prosecution, conviction, and incarceration.

**1.     Standard: Probable Cause Requires An Officer To Consider All Available Evidence**

The Fourth Amendment protects against unreasonable seizures, "including seizures that involve only a brief detention short of traditional arrest." *United States v. Mendenhall*, 446 U.S. 544, 551, (1980). Generally, seizures are reasonable only if based on probable cause to believe that the individual has committed a crime.  *Bailey v. United States*, 568 U.S. 186, 192 (2013).

The important corollary to this well-known legal rule is that, in making a probable cause determination, officers "cannot simply turn a blind eye toward potentially exculpatory evidence." *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999).  Officers cannot make "hasty, unsubstantiated arrests with impunity" or "simply turn a blind eye towards potentially exculpatory evidence known to them." *Ahlers*, 188 F.3d at 371-372.  In other words, even though officers do not have to search for balancing evidence after establishing that probable cause existed, officers must consider all evidence, including exculpatory evidence, in their possession before making a probable cause determination.

2. **Officer Baird Lacked Probable Cause To Arrest Plaintiff.**

Plaintiff will address the "false arrest" and "malicious prosecution" theories together, as the issues overlap and they both form the basis for his § 1983 claim. (*See* Complaint Count I, Doc.1, PageID#5-6.)

This is not a case about an "incomplete investigation" or a "failure to investigate," as the Sixth Circuit has generally imposed no "duty to investigate" on officers. *Ahlers*, 188 F.3d at 371. As set forth in ¶ 24 of the Complaint, this is a case where an officer lacked probable cause for an arrest based on the totality of the information in his possession at the time he made the decision to arrest Plaintiff. (Complaint, Doc.1, PageID#4-5.) "The rule that there is no duty to conduct a further investigation after probable cause is established, however, coexists with the tempering rule that police officers cannot cherry-pick facts in determining that probable cause exists. *Franklin v. Miami Univ.*, 214 F.App'x 509, 514 (6th Cir. 2007) (Clay, J. dissenting).

    a. **Baird Failed To Consider The Totality Of The Circumstances, Including Both The Inculpatory And Exculpatory Evidence, Before Determining If He Had Probable Cause To Make An Arrest**

The Sixth Circuit has long held the view that "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). *See also Crockett v. Cumberland College*, 316 F.3d 571, 581 (6th Cir. 2003) (in general, the question of probable cause is one for the jury, unless it is clear that only one reasonable determination is possible). Viewing the facts in a light favorable to Redden, this Court should deny the Motion because a jury could conclude that a reasonable officer, after reviewing all the available evidence, would not have believed that Redden had probably committed a crime.[4]

---

[4] *See Provience v. City of Detroit*, 529 F.App'x 661, 669 (6th Cir.2013) (the totality of the circumstances that existed when a suspect was arrested must be construed in the light most favorable to the suspect as the party opposing summary judgment).

The Sixth Circuit has been clear that an "officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire*, 205 F.3d at 317. In *Gardenhire*, for example, the Sixth Circuit affirmed a denial of summary judgment in § 1983 case alleging an arrest without probable cause where the officers possessed inculpatory and exculpatory evidence over the courts of an investigation. This applies even when, as in this case, an officer initially has probable cause, but before making an arrest obtains exculpatory evidence. The court explained that "as the police officers gathered more facts about the alleged crime, the totality of the circumstances changed" and that when there are "fluid, fact-specific elements at the heart of this probable cause inquiry, it is a question properly reserved to the fact-finding province of a jury." 205 F.3d at 318. *See also Harris v. City of Saginaw*, 62 F.4th 1028 (6th Cir.2023) (affirming denial of summary judgment for officers who allegedly arrested the plaintiff without probable cause where a reasonable jury could conclude that officers "had seemingly made up their minds prior to speaking to [witnesses], viewing the security footage, or hearing [the suspect's] clarifications."); *Logsdon v. Hains*, 492 F.3d 334, 343 (6th Cir. 2007) (officers "deliberately disregarded available evidence and, consequently, failed to reasonably formulate probable cause").

Here, the alleged victim had provided a written statement accusing Redden of domestic violence. But that was not the end of Baird's inquiry. Baird testified that he did not make his arrest decision based solely on the receipt of the written statement.[5] He described the statement only as a

---

[5] The statement from Langen, standing alone, may have been sufficient to establish probable cause. The Sixth Circuit has noted that the statement of a supposed victim alone can be enough to support probable cause. *See Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003), *citing Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001). But, fortunately for Plaintiff, that is not this case – Baird continued to investigate and uncovered information which called the alleged victim's statement into question. *Ahlers, supra,* is instructive. There, a victim's "accusation that she had been sexually assaulted by [the § 1983 plaintiff], standing alone, was sufficient to establish probable cause," where there was no apparent reason to question the reliability of that accusation. 188 F.3d at 370. But the *Ahlers* court is clear that when facts that suggest that a defendant did not commit the

"determining factor into establish[ing] probable cause." (Baird Depo., Doc.16, PageID#84.) He explained that after receiving the statement he went to Redden's home to "further investigate the complaint of domestic violence." (Baird Depo., Doc.16, PageID#87.) He testified clearly that he had not decided to arrest Redden right after receiving this statement:

> Q When you decided to leave for [Redden's home], had you determined whether there
> was probable cause to arrest Mr. Redden?
> A I needed further information to complete the investigation.

Baird Depo., Doc.16, PageID#89.)[6] The decision to further investigate and review the available evidence before making an arrest decision is consistent with the practices expected by Baird's supervisor, who testified:

> I would expect him to review the videos, speak to the suspect, speak to the victim,
> peak to any witnesses that may or may not be there and make a decision -- based on
> the ORC and based on our policy, that he is making a determination who the primary
> aggressor was in the situation.
>
> And -- and you're asking about the videos. I would ask him to -- or do the videos show
> this? Do the videos give you the information who the primary aggressor is?

(Rogers Depo., Doc17, PageID#249.) Baird further testified that he reviewed the videos provided by Redden's daughter in making his probable cause determination. (Baird Depo., Doc16, PageID#110.)

---

crime are known to an officer, those facts cannot be ignored in making the probable cause determination. 188 F.3d at 371-72;

[6] This fact distinguishes *Marriott v. Persing*, 6th Cir. No. 23-3620, 2024 U.S. App. LEXIS 5964, at *8 (Mar. 11, 2024). In *Marriott* the plaintiff argued that "officers turned a blind eye to potentially exculpatory evidence" obtained after they had placed him under arrest. Here, Baird viewed the videos *before* deciding to place Redden under arrest.

*Marriott* and *Gardenhire* illustrate how the timing of the arrest decision makes all the difference. In *Gardenhire* the police had the exculpatory evidence at the time of the arrest, while in *Marriott* the police obtained the exculpatory information after they made an arrest decision. Here, had Baird decided to arrest Redden after receiving the statement from Langen and done no further investigation, (ironically) he might have a much stronger defense here. But he didn't. The Sixth Circuit has recognized that a probable cause determination must rest on "the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence." *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008), *quoting Gardenhire*, 205 F.3d at 318. In considering whether probable cause existed, this Court must look to all of "the information possessed by the arresting officer at the time of the arrest." *Id.* at 501, *quoting Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).

The record in this case is replete with evidence from which a jury could conclude that Baird was aware that the sum of what transpired between Redden and Langen was initiated by Langen and that Redden had not committed any crime. Baird even admitted that in conducting investigations, he would simply arrest a person who was not injured as the "primary aggressor," without regard to who actually started the fight![7] (Baird Depo., Doc.16, PageID#101.) Baird could not testify that he asked Langen any questions about Redden's allegations that he had been struck by Langen, even though Langen admitted to such conduct in her written statement:

> Q So as you sit here under oath, can you testify that you asked Ms. Langen any questions about Mr. Redden's allegations that she struck him?
> A I -- again, sir, I do not recall. She wrote it down in her statement. I do not recall if I specifically asked her about that or not.

(Baird Depo., Doc.16, PageID#102.) Baird filed to comply with departmental policy by obtaining recorded statements from either Redden or the witness who had seen the incident. (Baird Depo., Doc.16, PageID#107; DV Policy, Doc.16-2, PageID#188-189.)[8] Baird also never ran a criminal record check on Langen, even though he testified that he uses the criminal history as "one of the factors in determining whether to arrest or who is the primary physical aggressor." (Baird Depo., Doc.16, PageID#134.)[9]

---

[7] Baird's testimony:

> Q. So let me give you a hypothetical situation. If Party A hits Party B and doesn't cause a physical injury, and then Party B hits Party A back and breaks Party A's nose, who's the primary aggressor?
> A That would be the person that -- who created the bloody nose punch.

(Baird Depo., Doc.16, PageID#102.)

[8] The DV policy states: "When practicable, officers should obtain and document statements from the victim, the suspect, and any witnesses, including children, in or around the household or location of occurrence." The DV Policy further states that "When practicable and legally permitted, video or audio record all significant statements and observations." (DV Policy, Doc.16-2, PageID#188-189.)

[9] Department Policy also required that Baird run a check on the criminal history of *all* involved parties. (Policy, Doc.16-2, PageID#192.) He did not do this.

A reasonable jury could look at the totality of the circumstances – particularly the videos – and conclude that probable cause did not exist. Baird *only* ever considered that Redden, and not Langen, was the primary aggressor and refused to consider Redden's allegations against Langen. Baird testified at trial:

> Q … And did Mr. Redden ask you what he could do about that property damage or if he could press charges for any of the property damage?
> A Yes, he did.
> Q And what was your response?
> A My response was that they -- I was called there to investigate a domestic violence complaint and that the damage that was caused was in course of the domestic violence.
> Q So did you say that he wasn't able to press charges?
> A At the time I was not going -- I was entertaining and taking a report for the domestic violence part.

(Trial, Doc.21-1, PageID#709-710. *See also Id.* at PageID#757 (Baird told Redden "You cannot press charges on Mrs. -- Ms. Langen because you incited her…").)

Baird testified at his deposition that he believed the video "showed that Mr. Redden was forcefully holding [Langen] down on the ground, which caused the scrape to the knee as well as the injury to her arm." (Baird Depo. at 84.) In fact, the video exonerates Redden, and Baird's self-serving characterization is not supported by the record. The Court should not take Counsel's word for this. The witness to the incident who took the videos testified at trial:

> Q And when [Langen] went up to the door, what did she do?
> A She tried to force her way in.
> Q Okay. In the report Ms. Langen stated that she bit… Mr. Redden by mistake. When you -- when you -- what you witnessed, did anything look like a mistake?
> A No.
> Q You spoke to the officer on the date in question, correct?
> A Yes

(Trial, Doc.21-1, PageID#748.) And here is how the Twelfth District Court of Appeals characterized the video:

> Langen repeatedly tried to push her way inside the house, eventually becoming successful, while Redden tried to keep her out. A video recording of a portion of the incident shows Langen trying to crawl sideways inside the house past Redden as the sliding door is partially open and Redden is standing in the doorway… Langen

11

> sustained bruises on the back of her leg and the bruise and scrape on her right arm during the parties' scuffle at the sliding glass door when she was trying to force her way inside the house and Redden was trying to keep her out of the house and close the door.

*Redden*, 2024-Ohio-1088, ¶ 12.[10]  Accordingly, the video in Baird's possession clearly showed that Langen was the primary aggressor and that Redden came into physical contact with Langen when she tried to push her way inside the house and he tried to block her from entering the house and close the door.  The evidence in Baird's possession also clearly showed that, in the words of the Twelfth District, "Redden's only intent on the day of the incident was to keep a determined and angry Langen from entering the house, and once inside, to prevent her from breaking things or hitting him." 2024-Ohio-1088, ¶ 14.

### b.     Defendants' Arguments Are Unavailing

Defendants make a number of arguments to avoid the fact that Baird ignored exonerating evidence in his possession when he decided to arrest Redden.  These fail.

Defendants first suggest that a prosecuting attorney "determined there was evidence-based probable cause."  Def. Memo. at PageID#546.  Defendants cite no evidence in the record that this occurred (they cite only to the decision of the Twelfth District to support this claim).  To be clear: there is no evidence in the record that Baird discussed this case with a prosecutor or that the case was ever actually reviewed by a prosecutor.  The Complaint was signed by Baird, not a prosecutor.  (Criminal Complaint, Doc.16-7, PageID#217.)  Baird testified:

> Q. So you caused the charges to be filed against Mr. Redden?
> A At the complaint of the victim.
> Q Okay. Well, it's your determination; right? It's your signature there at the bottom; right?

---

[10] Baird had a different characterization of the evidence.  (*See e.g.* Baird Depo., Doc.16, PageID#124-126.)  This, at best shows that there is a classic issue of a fact about whether the videos are exonerating – the Twelfth District says, "yes," Baird says "no."  At worst, Baird's self-serving testimony on this issue is not credible enough to lead the Court to conclude there is no issue of fact.  Baird admitted that he was "unaware" of "anything that contradicts the language from the Court of Appeals" and that he could not recall "any evidence that you developed during [his] investigation that had her disputing that she tried to force her way inside the house."  (Baird Depo., Doc.16, PageID#128.)

> A Yes. Given the facts that were presented to me, yes.
> Q And you booked him into the Butler County Jail?
> A That is correct.

(Baird Depo., Doc.16, PageID#132.)[11] Regardless, the role of a prosecutors considering whether they could secure a conviction under the standard of 'beyond a reasonable doubt' is different from the role of a police officer determining probable cause and it is undisputed that the prosecutor was not involved in the investigation or arrest decision.

Defendants next suggest that Ohio "preferred arrest" law "inherently provided Baird with… cause for arrest." Def. Memo. at PageID#545. Ohio law provides that where a peace officer has "reasonable grounds to believe that the offense of domestic violence… has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, it is the preferred course of action in this state that the officer arrest and detain that person." R.C. 2935.03(B)(3)(b). This statute merely codifies the constitutional requirement of probable cause for an arrest. The term "reasonable cause" in this context is the same as "probable cause." Ohio courts in interpreting this statute have held that "'Reasonable cause' has the same meaning as 'probable cause', under the Fourth Amendment." *State v. Murta*, 1980 Ohio App. LEXIS 10079, at *4 (4th Dist. Aug. 6, 1980). Ohio courts have also observed that language of the preferred arrest statute simply "articulates the traditional standards of probable cause to arrest and applies such standards to the offense of domestic violence." *State v. Lampe*, 2003-Ohio-3059, ¶ 14 (1st Dist.). The U.S. Supreme

---

[11] Defendants are incorrect to suggest that Redden's conviction by a magistrate judge means that Baird had probable cause to arrest Redden. The question of probable cause at the time of arrest is distinct temporally and legally from the sufficiency of evidence presented at a trial. There can be probable cause to initially arrest a defendant, even if there is not sufficient proof to convict him at trial. Similarly, there can be no probable cause to arrest a person, yet sufficient evidence later developed to support a conviction at trial.

For this same reason, Redden is *not* arguing that the reversal by the Twelfth District is determinative of the issue of whether Baird had probable cause. *Compare* Def. Memo. at PageID#546. That said, the Twelfth District's decision is very persuasive on this issue, as three judges of that court reviewed the same evidence in the possession of Baird – the videos – and found that they were highly exculpatory.

Court has similarly said:

> No argument is made that there is a substantial difference in the meaning of these expressions, and we think there is none. If there was a probable cause of seizure, there was a reasonable cause. If there was a reasonable cause of seizure, there was a probable cause.

*Stacey v. Emery*, 97 U.S. 642, 646 (1878). Ohio courts have also observed that language of the preferred arrest statute simply "articulates the traditional standards of probable cause to arrest and applies such standards to the offense of domestic violence." *State v. Lampe*, 2003-Ohio-3059, ¶ 14 (1st Dist.). And the Ohio Supreme Court has observed that "police officer loses the privilege to arrest" under this statute "when a reasonable police officer would understand that probable cause is lacking." *State v. Steele*, 2013-Ohio-2470, ¶ 28.

Defendants' suggestion that, as a result of the preferred arrest statute, the written statement from Langen, by itself, provided probable cause for an arrest fails because, in the § 1983 context, the inquiry into whether the Plaintiff's Fourth Amendment rights were violated cannot stop at the question of whether Baird followed state law. The fact that Ohio Revised Code provides for an arrest based solely on a written statement is irrelevant. Courts in this Circuit have held that "Because actions under § 1983 concern violations of federal rights, an officer's compliance with a state statute does not defeat a § 1983 action."[12] *Denton v. Rievley*, E.D.Tenn. No. 1:07-CV-211, 2008 U.S. Dist. LEXIS 60280, at *4-5 (July 21, 2008), *aff'd*, 353 F. App'x 1 (6th Cir. 2009).[13] In *Denton*, for example, a police officer

---

[12] In *Thacker*, *supra*, the Sixth Circuit referred to Ohio's preferred arrest statute in a case involving an alleged improper arrest for domestic violence. This statute was not dispositive; the court proceeded to undertake a traditional probable cause analysis seeking to determine whether a probability existed that the suspect committed the offense. Unlike in this case, where additional evidence contradicted the statement of the alleged victim, in *Thacker* the Sixth Circuit held that even if the alleged victim's statement was disregarded, "the totality of the facts and circumstances known to the officers collectively provided probable cause to arrest [the plaintiff] for domestic violence." 328 F.3d at 256-257

[13] The Sixth Circuit, in affirming the *Denton* decision, addressed this issue in the qualified immunity context, noting that other circuits have held that while reliance on a statute is a factor to consider in determining whether or not an officer's actions were objectively reasonable, reliance on a statute does not make an official's conduct *per se* reasonable. 353 F.App'x at 6-7.

argued that his actions in arresting a person for domestic violence was proper under a Tennessee law allowing police officers to make arrests for misdemeanor domestic abuse cases without a warrant. The court said that "Defendant's contention is irrelevant to the constitutional question at issue here. If an action is prohibited by the Fourth Amendment, a state law cannot permit it." *Id.* Similarly, in *Sanders v. Det. Police Dept.*, E.D.Mich. No. 07-14206, 2016 U.S. Dist. LEXIS 2040, at *8-9 (Jan. 7, 2016), a court held that reliance on a similar Michigan law which provides that law enforcement agencies should create written policies for responding to domestic violence situations that recommend making an arrest if the police officer has probable cause to believe an individual committed a domestic assault "does not shield Defendants from complying with the Fourth Amendment." *Cf. Cooper v. California*, 386 U.S. 58, 61 (1967) ("The question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment."); *Ybarra v. Illinois*, 444 U.S. 85, 96 n.11 (1979) (legislature cannot abrogate a person's Fourth Amendment right to be free from unreasonable searches and seizures); *Anaya v. Crossroads Managed Care Sys.,* 195 F.3d 584, 591 fn.2 (10th Cir. 1999) (noting that even when the Fourth Amendment standard is reflected in a state statute, "a state statute does not and cannot define the scope of constitutional rights").[14]

---

[14] The cases cited by Defendant on PageID#545 of their Memorandum are inapposite because none involved situations where the officers ignored exculpatory evidence and/or had admissions from the accused. *State v. Gipp*, 2024-Ohio-1076, ¶ 29 (2nd Dist.) (defendant admitted to a confrontation and court acknowledged that an arrest for domestic violence under the statute "without probable cause is constitutionally invalid"); *State v. O'Neill*, 2015-Ohio-815, ¶ 34 (3rd Dist.) ("observations at the scene which corroborated" alleged victim's statements); *White v. Roch*, 2005-Ohio-1127, ¶ 16 (9th Dist.) (no mention of evidence besides written accusation); *Bringman v. Fredericktown*, S.D.Ohio No. 2:15-cv-628, 2016 U.S. Dist. LEXIS 142173, at *5 (Oct. 13, 2016) (accused claimed in statement to police "that he did not intend to hurt [alleged victim], but acknowledged that he knowingly shoved her"); *Lampe*, 2003-Ohio-3059, ¶ 14 (no discussion of police possessing exculpatory evidence); *State v. Miller*, 91 Ohio App. 3d 270 (3rd Dist. 1993) (suspect was not arrested until after he made an "incriminating admission"). *Sheets v. Mullins*, 109 F.Supp.2d 879, 889 (S.D.Ohio 2000), *Rev'd*, 287 F.3d 581 (6th Cir. 2002), does not involve a false arrest claim, but whether a failure to respond in a timely fashion, to arrest upon obvious probable cause, and to prosecute a criminal wrongdoer does can result in liability under § 1983.

Defendants next suggest that Redden asserted self-defense at the scene, which Defendants ask this Court to view as an admission of probable cause.[15] Def. Memo. at 9. Defendants cite no Sixth Circuit authority for this argument – likely because the Sixth Circuit has held that

> The officer is not required to accept the explanation without question, but a police officer "may not ignore information known to him which proves that the suspect is protected by an affirmative legal justification."

*Frodge v. City of Newport*, 501 F.App'x 519, 527 (6th Cir. 2012)*, quoting Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).[16] Even if Defendants were correct on the law, this argument fails because Defendants cite no evidence in the record to support the claim that Redden asserted self-defense at the scene.[17] Nothing in the record, in fact, supports the assertion that Redden admitted to committing domestic violence, but claimed the criminal act was justified by self-defense. The police report prepared by Baird does not include any statement by Redden suggesting he was claiming self-defense. (Report, Doc.16-5, PageID#203-204.) Baird admitted that he failed to obtain a written or recorded statement from Mr. Redden. (Baird Depo., R.16, PageID#105.) The record that Redden never took any actions in self-defense which would qualify as domestic violence (knowingly causing or attempting to cause physical harm) but-for the affirmative defense. He testified that Langen "Bit and punched

---

[15] Defendants make this argument despite the fact that the Ross Township DV policy requires an officer to consider "whether the alleged violence was caused by a person acting in self-defense." (DV Policy, Doc.16-2, PageID#192.)

[16] In *Fridley*, the Sixth Circuit suggested that if the circumstances suggest that a suspect may have an affirmative defense, unless a reasonable officer would "conclusively know" that the suspect is protected by the defense, the officer is free to arrest the suspect provided there is probable cause to do so. 291 F.3d 873. This exception is inapplicable here. Assuming that Redden *had been* asserting self-defense (*but, see* main text) – a reasonable jury could find, after reviewing the videos, that Baird conclusively knew that Redden's actions were justified.

[17] Defendants cite generally only to page 4 of the Complaint (which is not evidence). But the Complaint does not bolster their arguments. The Complaint states that "The video in Baird's possession clearly showed that Redden did not knowingly cause or attempt to cause physical harm to Langen." (Complaint, Doc.1, PageID#4.) The Complaint further states that Redden "came into physical contact with Langen when she tried to push her way inside the house" – which is not a self-defense claim but a denial that 'knowingly caused or attempted to cause her physical harm' as required by the Ohio domestic violence statute. (Trial, Doc., PageID#766 ("I'm having to keep her out. That's all I was doing, was keeping her out of my house.").)

me to try to get through the doorway." He explained that he "just -- had my arms around her, just restraining her." (Redden Depo., Doc.18, PageID#452.) He later testified, "I mean, at one point I had her in a bear hold so she couldn't go anywhere. I was just keeping her out of the house." (Redden Depo., Doc.18, PageID#452.) At trial he testified:

> Q Did you ever hit Ms. Langen?
> A No, Ma'am.
> Q And the only time you came into contact with her was when you were trying to keep her out of your home?
> A Correct.

(Trial, Doc.21-1, PageID#778.)

Finally, Defendants' suggest that Redden's § 1983 malicious prosecution claim fails because Baird did not participate in a decision to prosecute by making deliberate falsehoods. Def. Memo. at PageID#548. This argument fails because the cases relied upon by Defendants refer to situations where prosecutors rely on police officer statements to initiate charges.[18] A Fourth Amendment malicious prosecution claim is viable where the charges were initiated by a defendant who "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Sykes v. Anderson*, 625 F.3d 294, 316 (6th Cir. 2010). In this case, Baird, himself, signed the criminal complaint that initiated the prosecution. *Cf. Novak v. City of Parma*, 33 F.4th 296, 307 (6th Cir. 2022) (holding that an officer participates in the decision to prosecute when he could "reasonably foresee that his misconduct" would result in the prosecution of the plaintiff). *Compare Kinkus v. Village of Yorkville*, 289 F.App'x 86, 91 (6th Cir. 2008) (officer "had no role in choosing to prosecute" plaintiff); The Sixth Circuit has explained that "the

---

[18] *See Newman v. Twp. of Hamburg*, 773 F.3d 769, 771 (6th Cir. 2014) (claim that officer's affidavit for a warrant purposefully distorted evidence). Other courts have explained that to satisfy the first element of a malicious prosecution claim against a police officer, the "plaintiff must show that the officer brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits or swore to and signed a felony complaint"; or "[a]lternatively, an officer initiates a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor. *Santiago v. City of Yonkers*, S.D.N.Y. No. 21 Civ. 764, 2023 U.S. Dist. LEXIS 51961, at *22 (Mar. 27, 2023), *quoting Israel v. City of New York,* S.D.N.Y. No. 16-cv-6809, 2018 U.S. Dist. LEXIS 241008 at *6 (Sept. 29, 2018).

17

right to be free from malicious prosecution extends to deliberate or reckless falsehoods that result in arrest and prosecution without probable cause" and that this includes "omissions and inconsistencies that evince a reckless disregard for the truth." *Caskey v. Fenton*, 6th Cir. No. 22-3100, 2022 U.S. App. LEXIS 31750, at \*32 (Nov. 16, 2022). Here, in addition to ignoring exculpatory evidence in his possession a reasonable jury could find, for example, the record shows that Baird misrepresented the content of the videos to any reviewing authorities. Baird wrote in his report that in a video "Mr. Redden is seen pushing Ms. Langen down, and continuing to not give back the phone." (Report, Doc.16-5, PageID#204.) The reality is that the videos show Lengen repeatedly trying to push her way inside the house while Redden tried to keep her out and the phone was not Langen's.

**C.     Plaintiff Has Sufficient Evidence Proceed On His Failure To Supervise Claim**

Ross Township seeks to shield itself from liability "under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Under *Monell,* in order to hold Ross Township responsible, Redden needs to show that Ross Township maintains a policy or custom of inadequate supervision on probable cause determinations for constitutional arrests. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006), *citing City of Canton v. Harris*, 489 U.S. 378, 387 (1989). An insufficient policy or custom need not be formally approved or implemented, provided that the failure to train or supervise "evidences a deliberate indifference to the rights of" individuals within that city. *See Canton*, 489 U.S. at 389.

Defendants suggest that Plaintiff's failure to supervise claim fails because Plaintiff "alleges only one instance – his" of improper supervision. True, as the Sixth Circuit has observed, plaintiffs most commonly demonstrate municipality's deliberate indifference by pointing to a failure to act "in response to repeated complaints of constitutional violations by its officers." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023). But the court has also held:

> a plaintiff can rely on a single incident to establish liability in a narrow range of circumstances "if the risk of the constitutional violation is so obvious or foreseeable"

that it amounts to deliberate indifference for the municipality to fail to prepare its officers for it.

Id *quoting Ouza v. City of Dearborn Hts.*, 969 F.3d 265, 287 (6th Cir. 2020).  In *Ouza*, for example, the court considered a situation where the city failed to "put on any evidence that it does in fact evaluate, review, or monitor the conduct of its officers."  This, in part led the court to conclude that there was a factual dispute as to the municipality's deliberate indifference to its citizens' constitutional rights.  The court concluded that summary judgment was not available to the municipality because "a reasonable jury could find [the city] responsible for Plaintiff's constitutional injuries under a theory of single-incident liability

In this case, "deliberate indifference" can be shown by the fact that Baird operated with no supervision whatsoever.  Baird testified that he had "no idea" if his report was actually reviewed by a supervisor and that he never discussed the arrest decision with a supervisor because "he was the only one working that day."  (Baird Depo., Doc.16, PageID#138-139.)  He testified:

> Q … Do you recall if your report was ever reviewed by a supervisor?
> A I -- I would -- I would have no idea. I'm not a supervisor, and I don't follow everything that they do. I -- I couldn't tell you whether they read the whole thing, looked at the entire thing. I -- I have no idea. I don't -- I was not nor am I a supervisor.

(Baird Depo., Doc.16, PageID#138.)  The Police Report indicated that the supervisor was Officer Rogers.  (Report, Doc.160-5, PageID#204.)    Yet Officer Rogers testified that he was "not involved in the case" and never reviewed the reports or evidence.  (Rogers Depo., Doc.17, PageID#248.)

## D.    Officer Baird Is Not Entitled To Qualified Immunity

Considering both inculpatory and exculpatory facts in the light most favorable to the Plaintiffs, Redden's arrest was not supported by probable cause.  *See supra*. Moreover, a reasonable jury could find that no reasonable officer with knowledge of these facts would believe that the arrest was supported by probable cause.  *See supra*.

19

Baird had "fair warning" that his conduct would be unlawful and a reasonable officer in his situation would know that his conduct was unlawful in the situation he confronted.  Sixth Circuit precedent establishes "that an officer must consider both inculpatory and exculpatory evidence when assessing probable cause."  *Ouza*, 969 F.3d at 282-283, *citing Gardenhire,* 205 F.3d at 318 (police officers did not have probable cause to arrest where they did not take into account known exculpatory evidence).  Baird admitted in his deposition that this right is clearly established:

> Q And when you make that probable cause to effect an arrest, do you consider all the evidence  that you've collected in the case?
> A That is correct. All evidence, initial statements from any witnesses or complainants.
> Q ... And does that include a requirement to consider any evidence that you collected that is favorable to the accused?
> A Any and all evidence, sir.
> Q So just so it's clear on the record here, you would agree with me that it's clearly established that in making a probable cause determination you have an obligation to consider evidence that is favorable to the accused?
> A Any and all evidence, sir.

(Baird Depo., Doc.15, PageID#74-75.)

Baird's admission is consistent with Sixth Circuit precedent.  The Sixth Circuit has, on a number of occasions, found that this right is "clearly established" for qualified immunity purposes. In *Logsdon v. Hains*, 492 F.3d 334, 342-343 (6th Cir.2007), the Sixth Circuit held that, since at least *Gardenhire,* "our Circuit's precedent… does require that warrantless arrest follow consideration of the totality of the circumstances reasonably known to the arresting officers" and that "officers initially assessing probable cause to arrest may not off-handedly disregard potentially exculpatory information made readily available by witnesses on the scene."  And in *Ouza* the Sixth Circuit said that officers had "fair warning" from "our precedent establishing that an officer must consider both inculpatory and exculpatory evidence when assessing probable cause."   969 F.3d at 282.

**CONCLUSION**

The Motion for Summary Judgment should be denied.

Respectfully submitted,

_____/s/ Joshua A. Engel_____
Joshua Adam Engel (0075769)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's electronic filing system this October 27, 2025 upon all counsel of record.

/s/ Joshua Engel

21