**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MICHAEL REDDEN, | : | CASE NO. 1:24-CV-00342 |
| Plaintiff, | : | JUDGE Matthew W. McFarland |
| v. | : | |
| TIM BAIRD, *et al.*, | : | **DEFENDANTS TIM BAIRD AND ROSS TOWNSHIP'S REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR** |
| Defendants. | : | **SUMMARY JUDGMENT (DOC. 19)** |

Now come Defendants, Tim Baird ("Baird") and Ross Township (collectively, "Defendants"), by and through undersigned counsel, who respectfully submit their Reply in Support of their Motion for Summary Judgment. (Doc. 19).

**I.  Introduction**

Defendants submitted their Motion for Summary Judgment on September 15, 2025. Therein, Defendants addressed each claim Plaintiff raised in his Complaint filed June 25, 2024. After extension, Plaintiff responded to Defendants' Motion on October 27, 2025. Even with the extension, Plaintiff's response is void of persuasive arguments and legal analysis as of why summary judgment should not be granted in full.

Plaintiff's arguments do two things. They incorporate 20/20 hindsight analysis long rejected by this Court and demonstrate refusal to accept established laws when they fail to support his case. As addressed below, the facts and law are clear: Redden's arrest was justified making this case ripe for dismissal in its totality.

**II.  Statement of Facts**

Defendants briefed the facts of this case in their Motion for Summary Judgment. (Doc. 19).

1

Defendants incorporate herein all facts contained in said motion. Any additional facts set forth herein will be cited accordingly.

**III.　Law and Argument**

**A. Probable cause is determined by a police officer at the scene; not by a Court of Appeals or an unhappy Plaintiff.**

The crux of Redden's argument requires reliance upon arm-chair quarterbacking and second-guessing the actions of a police officer over two years after his arrest and only after the Twelfth District reversed his conviction based upon evidence presented at trial. These have no bearing on the outcome of this case. As previously argued, a court's dismissal or a suspect's later-found "innocence" does not mean that probable cause did not exist. *Fisher v. Jordan*, 91 F.4th 419, 425 (6th Cir. 2024). "[P]robable cause depends on an evaluation of the events leading up to the arrest." *Id*. A Fourth Amendment inquiry "necessitates an inquiry into probabilities, not certainty." *Beckham v. City of Euclid*, 689 Fed. Appx. 409, 416 (6th Cir. 2017). It is not about certainty of guilt – it "is not a black and white test." *Al-Lamadani v. Vill. of Indian Hill*, 2014 U.S. Dist. LEXIS 112828, *10 (S.D. Ohio). Probable cause simply means that "the facts and circumstances known to the officer" were sufficient to lead a "prudent man" to believe an offense has been committed." *Novak v. City of Parma*, 33 F.4th 296, 304 (6th Cir. 2022) citing *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Accordingly, the analysis at issue in the instant case is whether probable cause existed from the initiation of Baird's contact with Langen, the investigation, Redden's arrest, and the law. Redden explicitly discounts the latter and takes it as a suggestion: "More importantly – the reason we are here – Baird obtained video of the incident." (Doc. 22, PgID 804). To the contrary, the law is clear: Courts *must* view the totality of circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). This perspective is based upon the *officer's perception*.

2

See *United States v. Stewart*, 315 Fed. Appx. 554, 558 (6th Cir. 2009); *Cook v. Boss*, 2025 U.S. App. LEXIS 1966, *13 (6th Cir.); *Nance v. Kilpatrick*, 2019 U.S. Dist. LEXIS 52411, *45 (E.D. Tenn.); *Cameron v. City of Riverview*, 2011 U.S. Dist. LEXIS 89118, *17 (E.D. Mich)("The existence of probable cause depends on the perception of the officer who is confronted with a set of circumstances from which the officer must reach a conclusion about whether an offense has been committed."). This even if a party shows evidence to question the officer's perception. See *United States v. Perkins*, 209 Fed. Appx. 502, 505 (6th Cir. 2006).[1]

Probable cause is not a high bar. *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). This is why an officer having probable cause has a complete defense to an unlawful seizure "even if that belief was erroneous." *Wood v. Eubanks*, 25 F.4th 414, 421 (6th Cir. 2022). See also *King v. City of Rockford*, 97 F.4th 379, 402 (2024)(An officer is not liable "where he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken."). Redden argues the opposite, as though all arrests require scientific inquiry and statistical analysis to whether – beyond doubt – a person, namely him, committed the crime of domestic violence. The foregoing demonstrates this has never been required.

But Redden's argument further fails with recognition that the law does not constrain the probable cause inquiry to arrest for a *particular* crime. While Baird agrees with Redden that "[p]robable cause requires an officer to consider all available evidence" (Doc. 22, PgID 807), Redden takes a truncated view of the law. As stated in Baird's initial motion, the Fourth Amendment only requires that an officer have probable cause for *some* offense. "[A]n officer can lawfully arrest the plaintiff so long as there is probable cause to arrest [him] for some crime, even if the crime for which there is probable cause is different from the stated crime of arrest." *Amis v.*

---

[1] Defendants in no way support Plaintiff's argument there was a lack of probable cause but merely entertain the argument out of due diligence.

*Twardesky*, 637 Fed. Appx. 859, 861 (6th Cir. 2015) citing *Devenpeck v. Alford*, 543 U.S. 146, 153, 155, 125 S. Ct. 588 (2004). See also *Baker v. Carnine*, 2021 U.S. Dist. LEXIS 155604, *17 (S.D. Ohio) citing *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 676 (6th Cir. 2005)("[A] false arrest claim will not lie under § 1983 if there is probable cause for the plaintiff's arrest on a related offense."). Cases even Redden cites speak to whether *a crime* had occurred – not a specific crime. See *Bailey v. United States*, 568 U.S. 186, 192 (2013) ("[S]eizures are 'reasonable' only if based on probable cause" to believe that the individual has committed a crime."); *Franklin v. Miami Univ.*, 214 Fed. Appx. 509, 514 (6th Cir. 2007) (Clay, J. dissenting). ("[T]he law requires only a "fair probability" that an individual has committed a crime before allowing that individual to suffer the loss of liberty that accompanies an arrest.") Simply put, probable cause is a low threshold requiring only that the arresting officer at the scene, mistaken or not, believes he has probable cause to arrest a suspect for *some* crime. Here, the evidence Redden relies upon in attempt to make his case merely demonstrates a litany of crimes for which he could have been charged, including domestic violence. All of these potential charges were supported by facts known by Baird at the scene and available for consideration in determining whether criminal activity had occurred.

 First, Redden admits to taking Langen's cell phone. (Doc. 18, PgID 444). This is a crime under Ohio law: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: Without the consent of the owner or person authorized to give consent[.]" R.C. § 2913.02(A)(1). To the extent Redden attempts to claim the phone is his, the argument is unavailing. He twice refers the phone as "her phone." (Doc. 18, PgID 460). But also, Redden *gave* her the phone. (Doc. 18, PgID 437). Redden's argument of it being his phone would legitimize the figurative repossession of misanthropically gifted birthday present. Ohio law does not permit this. See *State*

4

*v. Pesec*, 2007-Ohio-3846, ¶ 76 (11th Dist.)(Theft offenses require evidence of a wrongful taking from the *possession* of another \*\*\*.) The facts of this case align with Ohio's definition of "owner." An owner is, "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." R.C. § 2913.01(D). Baird knew of this theft when he responded to the residence. (Doc. 16, PgID 95). This did not turn out to be untrue. Thus, Baird had probable cause to arrest Redden for theft – a theft that initiated the entire incident. (Doc. 18, PgID 101).

Second, Ohio law prohibits any person "knowingly mov[ing] or "improperly tamper[ing]" with "the property of another." R.C. § 2909.07(A)(1). Again, Redden reached into Langen's vehicle and took her phone from the phone charger. (Doc. 18, PgID 442). This constitutes criminal mischief, which requires "a showing of some change in either the physical location or physical condition of the property is necessary to sustain a conviction under the statute." *State v. Collier*, 2010-Ohio-4039, ¶ 23 (2nd Dist.). See also *State v. Cooke*, 2016-Ohio-3445, ¶ 14 (5th Dist.). Baird knew of the phone's removal when he responded to the residence. (Doc. 16, PgID 95). This did not turn out to be untrue. Thus, Baird had probable cause to arrest Redden for criminal mischief.

Third, Ohio law prohibits domestic violence. "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. § 2919.25(A). Baird observed, arrested, and charged Redden for this offense. What Baird observed to establish probable cause was based upon a multitude of factors. First and notably, Baird investigated two scenes. This is the fault of Redden because Langen could not call the police department from the residence or nearby because he took her cell phone. At the police department – the first scene – he observed an injured and emotional Langen. Baird fails to dispute this fact. At the first scene, Langen completed

a written statement. Baird fails to dispute this fact. Next, it is undisputed that Baird went to Langen's past residence and investigated further at the second scene. Again, Redden does not dispute this. Nor does Redden dispute that Baird watched video recordings of the struggle taken by his daughter, from whom Baird gathered a statement. Notably, the videos did not depict the entirety of the dispute. The videos do not depict the entirety of Redden fleeing with Langen's phone in the street or his continued flight around the house. The videos captured what they did to the extent the available technology and recording skills permitted. Neither party has disputed the recordings' veracity.

Redden relies only upon his self-serving statements *at the scene*. Again, no officer is "obligat[ed]" to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest." *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 637 (6th Cir. 2004) (citation omitted). Redden claims Baird turned a "blind eye towards potentially exculpatory evidence." (Doc. 22, Pg, ID 807). This did not occur. Without dispute, Baird turned his eyes *towards* "potentially exculpatory evidence" – in furtherance of the investigation at the second scene.

Redden further misconstrues Baird's decision to arrest as an exercise in "cherry-picking." This goes to the "cherry-pick[ing] [of] facts." See *Franklin v. Miami Univ.*, 214 F.App'x 509, 514 (6th Cir. 2007) (Clay, J. dissenting). In accordance with law, above, this would be the *facts* forming the totality of the circumstances "from the perspective of a reasonable officer on the scene[.]" *Kostrzewa*, supra. In this case, the facts known from multiple scenes formed Baird's perception of the incident. To this end, the Sixth Circuit recognizes that a police officer can use an eyewitness and video as a basis for probable cause. See *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). What is not required to form or disprove probable cause is a suspect's story. *Williams*, 370 F.3d at

6

637. Accordingly, Baird relied on what the Court permits him to rely upon and did not rely upon what the Court states he need not rely upon. By deduction, what remains are the undisputed facts (see above), which formed the basis of Baird's perception that probable cause to arrest Redden did in fact exist. Redden points to no facts stating why probable cause did not exist to arrest him.

Equally damning to Redden's case is the undisputed fact that Langen wrote a statement at the police department – the first scene. To determine whether an officer had probable cause to arrest someone for violation of a state statute, courts normally look to state law defining the offense. *Laning v. Doyle*, No. 3:14-cv-24, 2015 U.S. Dist. LEXIS 19424, at *14-15 (S.D. Ohio Feb. 18, 2015) citing *Michigan v. DeFillippo*, 443 U.S. 31,36, 99 S.Ct. 2627 (1979) ("Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law"). See also *Ingram v. City of Columbus*, 185 F.3d 579, 594 (6th Cir. 1999)("To determine whether officers had probable cause to arrest an individual, we must look to the law of the jurisdiction at the time of the occurrence."). Here, the offense at issue was domestic violence and pursuant to R.C. 2935.03(B)(3)(a) an officer has "reasonable grounds to believe that the offense of domestic violence *** has been committed and reasonable cause to believe that a particular person is guilty of committing the offense if*** [a] person executes a written statement alleging that the person in question has committed the offense of domestic violence***." This Court has previously held that the statement of the alleged victim that a plaintiff had abused her "is sufficient to establish probable cause." *Bringman v. Fredericktown*, 2:15-cv-628, 2016 U.S. Lexis 142173 at *13 (S.D. Ohio Oct. 13, 2016) citing *Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003; see also *Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001) (explaining officers need not interview an alleged offender where a victim claims that she was abused if such an interview would, at most, produce an exculpatory denial of wrongdoing).

7

To no surprise, Redden pushes this under the rug with attempts to distinguish it with various references to cases involving exculpatory evidence.² But to the extent that exculpatory evidence is relevant to the instant case—it is not—R.C. § 2935.03(B)(3)(a)(i) does not direct officers to ignore exculpatory evidence. Thus, the only extent to which Redden's arguments related to the statute are viable is to the extent that exculpatory evidence exists in this case. Redden fails to point to exculpatory evidence. Indeed, Redden refers to exculpatory evidence twenty-three times in his Response to Motion for Summary Judgment (Doc. 22, generally), but those references do not include – not one – any direct assertion or analysis of any purported exculpatory evidence that existed at either scene prior to the arrest. The purported exculpatory evidence upon which Redden relies is testimony at his trial in municipal court, depositions, or the Twelfth District's opinion. Notably, none of this "evidence" was available to Baird when rendering his decision to arrest Redden for domestic violence. This merely reverts back to "20/20 hindsight" condemned by the Court in a probable cause analysis. Ironically, Plaintiff acknowledges:

> [t]he question of probable cause at the time of arrest is distinct temporally and legally from the sufficiency of evidence presented at a trial. There can be probable cause to initially arrest a defendant, even if there is not sufficient proof to convict him at trial.

Doc. 22, PgID 814, Plt's Memo. P. 13, FN 11. And to the extent that Redden attempts to establish exculpatory evidence via the videos – which he describes as "the reason we are here" – that too demands 20/20 hindsight and a rejection of Baird's perception of the facts in their *totality*.

---

² For example, Redden cites *State v. Steele*, 138 Ohio St. 3d 1 (2013). Therein, a police officer arrested a juvenile for robberies even though: 1) he knew and told others the juvenile was innocent; 2) the juvenile did not match the description of the suspect: and 3) the juvenile denied any involvement in the crime. *Id*. at 2. Baird does not disagree that a reasonable police officer who knows a suspect is innocent "loses the privilege to arrest." *Id*. at 7. That is not the case here. Probable cause existed when Baird obtained Langden's written statement, see R.C. § 2935.03, but also in combination that the evidence obtained via further investigation. Thus, he could not have known that Redden was innocent. Baird then went to the scene and furthered his investigation. He still did not believe Redden was innocent. It does not matter what Redden or the Twelfth District believed. What matters is whether Baird believed he had probable cause. Though he did have probable cause, "a police officer does not lose the privilege to arrest merely because probable cause is lacking." *Steele*, supra, at 7. This comports with federal law. *Wood*, 25 F.4th at 421.

Common sense and the law do not support this.

To this, R.C. § 2935.03(B)(3)(a)(i) holds. Redden has done nothing to overcome its validity under the guise of a since-dismantled Fourth Amendment exculpatory evidence argument .[3] This means that the statute's plain language prevails. Thus, it remains that "reasonable grounds and reasonable cause under R.C. 2935.03 equate to probable cause[.]" *State v. Gipp*, 2024-Ohio-1076, ¶ 29 (2nd Dist.). And a written statement provides officers probable cause to arrest. *White v. Roch*, 2005-Ohio-1127, ¶ 17 (9th Dist.). Baird went further than just obtain a statement.[4] His determination was backed by Ohio's statute and his investigation is accorded validity under Fourth Amendment doctrine, above. Even if Ohio law did not codify probable cause by way of domestic violence victim's written statement, it still remains that Baird obtained a written statement from the victim. A written statement, related to the statute or not, and an oral statement support a finding of probable cause. *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 637 (6th Cir. 2004); *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). Here, Langen's written statement supported Baird's finding of probable cause, which Redden cannot overcome by way of purported exculpatory evidence manufactured long after Baird's investigations at both scenes.

With this, Redden attempts to create issues of facts that are not issues of fact at all. A "material" fact is one which "might affect the outcome of the suit under the governing law." *Jones v. Clark Cty.*, 959 F.3d 748, 756 (6th Cir. 2020) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, supra, 248. Again, the only facts that matter are what occurred from the time Baird responded to the police department until the time of Redden's arrest. These facts are not to

---

[3] To the extent Redden attempts to subvert the statute's validity, he should have done this via constitutional challenge, not in the instant effort to get a second chance at proving his innocence.
[4] "He explained that he went to Redden's home 'to investigate. I had to get her story. I needed to get her story.'" (Doc. 16, PgID 888; Doc. 22, PgID 804).

be weighed in "20/20" hindsight. *Radvansky*, 496 F.3d at 615, supra. The only way to dispute Baird's decision to arrest is to challenge his perception of the facts; one would have to prove that Baird did not observe what he observed and did not do what he did. An officer's perceptions are not to be discounted, even at the summary judgment stage. It is improper for a court to import "personal notions--about what might have been, could have been, or should have been--in a 'sanitized world of . . . imagination,' which differs from that of law enforcement." *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009). Baird's perception at the scene matters for purposes of probable cause. See *Stewart*, *Boss*, *Nance*, *Cameron*, *Perkins*, supra. It is immaterial whether Redden committed a crime beyond reasonable doubt – though ironically a prosecutor proved, and a court agreed, that he did. Neither Redden's nor the Twelfth District's perceptions on said conviction do not matter; they do not "affect the outcome of the suit under the governing law." Finding otherwise "would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming "it wasn't me." *Criss v. Kent*, 867 F.2d 259, 263 (6th Cir. 1988). The suspect's knowledge is immaterial. *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998).

The relevant facts and arguments of this case are clear. Under the totality of the circumstances – not simply the videos as Redden believes (Doc. 22, PgID 804) – but also Langen's injuries and statement, the facts warranted Baird's perception as a reasonable, prudent officer to believe there was probable cause to arrest Redden for at least the crime of domestic violence. Redden attempts to rehash Baird's perception by way of after-the-fact testimony and posturing which demands hindsight analysis wholly rejected by Fourth Amendment doctrine. His attempt is misplaced, and merely one that aims to put a probable cause determination into the hands of a criminal offender, and now, into the hands of a jury of his peers making in essence this entire case a do-over of his criminal proceeding. Civil complaints are meant to address wrongdoing, not do-

overs.

### B. Malicious prosecution is negated where probable cause exists. And here, it fails regardless.

Redden's malicious prosecution claim doubly fails. First, malicious prosecution rises or falls with the existence of probable cause. Here, as Redden should now be aware, probable cause existed for his arrest thus negating his claim for malicious prosecution. But further, even if probable cause did not exist, malicious prosecution also fails, as Redden's allegations and evidence fail to support it. A plaintiff must prove malicious prosecution. It is not part and parcel to wrongful arrest manufactured by a plaintiff after an ill-advised 20/20 hindsight analysis of his initial arrest. "[N]ot every failed criminal prosecution will sustain a subsequent malicious-prosecution suit." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014). This because "reasonable doubt" is not the issue in a malicious prosecution claim. *Id*. But malicious prosecution goes beyond the existence of probable cause.

Surely, it requires a plaintiff to demonstrate the lack of probable cause. *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) quoting *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). However, the full elemental requirements demand a showing: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute;" (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was "resolved in the plaintiff's favor." *Jones v. Clark Cty.*, 959 F.3d 748, 756 (6th Cir. 2020) citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). Passive and neutral participation does not satisfy the second element. *Sykes v. Anderson*, 625 F.3d 294, fn.5 (6th Cir. 2010). Merely filing a report equates to only passive or neutral participation. *Richards v. Cty. of Washtenaw*, 818 Fed. Appx. 487, 493 (6th Cir. 2020). This is true even if the

11

officer's report was allegedly misleading. *Id.*[5] Filing a report *and* signing a complaint does not overcome passive and neutral participation. *Day v. DeLong*, 358 F. Supp. 3d 687, 706 (6th Cir. 2019) citing *Kinkus v. Village of Yorkville, Ohio*, 289 Fed. App'x 86, 91 (6th Cir. 2008). Even more, "[t]estifying at trial can never be the basis of a malicious prosecution claim[.]" *Id.* citing *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). And to all of this, malicious prosecution only stands where the officer's "deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014).

Here, Baird arrested Redden, wrote a report, signed a complaint, and testified at trial. None of these things amount to malicious prosecution and Redden presents no evidence that Baird participated any more than this. Ultimately, it was the prosecutor's decision to prosecute Redden, and again, there is no evidence that Baird – who is not a prosecutor[6] – exerted any influence on the prosecutor to pursue prosecution. Redden's malicious prosecution claims fails with probable cause, but also fails without it. As such, summary judgment on Plaintiff's malicious prosecution claim must be granted.

### C. Baird retains qualified immunity because Redden cannot demonstrate any underlying claims.

Defendant Baird is entitled to qualified immunity. "Officers are entitled to qualified immunity unless they (1) violate a constitutional right (2) that was "clearly established" at the time of the wrongdoing." *Bell v. City of S.field*, 37 F.4th 362, 367 (6th Cir. 2022) (citation omitted). Clearly established means that if a right was violated it "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194,

---

[5] In no way was Baird's report misleading. This simply highlights that a filed police report that is not misleading could in no way equate to malicious prosecution.
[6] Rather, officers "prepare criminal cases for appropriate clearance or *submission to a prosecutor* (emphasis added)." (Doc 17-3, PgID 274).

202 (2001) (citation omitted). Qualified immunity stands so long as the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Raimey v. City of Niles*, 77 F.4th 441, 448 (6th Cir. 2023). The plaintiff must "identify 'a high 'degree of specificity' the legal rule that a government official allegedly violated.'" *Beck v. Hamblen Cty.*, 969 F.3d 592, 599 (6th Cir. 2020).

Redden's arguments and the instant material facts fall well short of demonstrating a constitutional right, addressed above, but further falter insofar as demonstrating that any right was clearly established. Redden's arguments in support of qualified immunity's abrogation only demonstrate that Baird did not violate a clearly established right: "Q And when you make that probable cause to effect an arrest, do you consider all the evidence that you've collected in the case? . . . A Any and all evidence, sir." (Doc. 22, PgID 821; Doc. 15, PgID 74-75). This is supported in the record as Baird sought out all evidence.

Beyond this, Redden makes no attempt to demonstrate any other "clearly established" right that could have been violated. First, Defendants find no law that a policy violation violates a constitutional right. The law is opposite. See *Latits v. Phillips*, 878 F.3d 541, 553 (6th Cir. 2017)(citation omitted). More specifically, Defendants find no law that a police officer must obtain videos or audio of an investigation (especially where cameras are not issued) or that an officer must obtain a criminal history report before making an arrest. Thus, deductive reasoning inclusive of Redden's arguments and the material facts, Redden's remaining argument is that a person has a clearly established right not be arrested if they disagree with the officer's perception of the totality of the circumstances at the scene(s), or, alternatively, if the Twelfth District overturns their conviction. All of this flies in the face of well-settled law. Accordingly, Baird is entitled to qualified immunity.

**D. *Monell* claims require pervasive underlying wrongdoing, which is entirely absent in the instant case.**

A plaintiff's *Monell* claim requires there be an underlying wrongdoing. *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). A plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382 (1997)). A plaintiff does this by showing that the municipality had a "policy or custom" that caused the violation of his rights. *Monell*, 436 U.S. at 694. At issue here, a failure to supervise claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, 735 F.3d at 478 (6th Cir. 2013). Prior instances mean more than one – "repeated complaints of constitutional violations by its officers." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023). This means the instance complained of should not be the occurrence relied upon for purposes of *Monell*.

Plaintiff generally agrees with the proposition but argues "a plaintiff can rely on a single incident to establish liability in a narrow range of circumstances 'if the risk of the constitutional violation is so obvious or foreseeable" that it amounts to deliberate indifference for the municipality to fail to prepare its officers for it.'" *Id*. (citation omitted). Plaintiff attempts to support this with *Ouza v. City of Dearborn Heights*, which found that the municipality did put forth evidence that would "evaluate, review, or monitor the conduct of its officers." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 289 (6th Cir. 2020).

Here, Redden – for obvious reasons –fails to demonstrate a prior instance where Ross Township failed to supervise an officer who acted according to the Ohio Revised Code; fully investigated a claim of domestic violence; found probable cause; and placed a suspect under arrest.

14

Moreover, Ross Township did evaluate, review, and monitor its officers. First, Chief Burton Roberts approved Baird's report. (Doc. 17, PgID 248; 255). Lieutenant Bryan Rogers "make[s] sure [the officers are] doing what have been trained to do[.]" (Id., Pg, ID 243). This includes "speak[ing] to the appropriate people involved" when there is a complaint or information of officer misconduct. (Id., PgID 251-252). This is the evaluation, review, and monitoring not done in *Ouza*, where qualified immunity was denied for tight handcuffing. *Ouza*, supra, at 274. Further, *Ouza* involved an arrested plaintiff who was the victim (twice in the same night) with corroboration of a witness *and the aggressor* and where the prosecutor *declined* to prosecute. *Ouza*, generally. These facts are not present here. Moreover, Ross Township's policy mirrors Ohio law insofar as it relates to domestic violence investigations. (Doc. 17-2, generally). Thus, where a police officer follows Ohio law and policy – and where there is no formal complaint (except until a Twelfth District dismissal) – Ross Township would not be compelled to further review Redden's arrest, especially where the prosecutor decided to prosecute. Here, Ross Township evaluated, reviewed, and monitored it officers, which led to an arrest based in law and Ross Township's policy. Redden's mere disagreement is irrelevant to the determination. Mere disagreement is not proof – proof which is a plaintiff's burden. Accordingly, Redden's *Monell* claim fails, and summary judgment should be granted.

### IV. CONCLUSION

Redden's arguments are based upon mere disagreements that well-settled law rejects as a means to demonstrate constitutional violations. Accordingly, Defendants Tim Baird and Ross Township respectfully request that this Court grant them summary judgment as to all claims against them.

Respectfully submitted,

SURDYK, DOWD & TURNER CO., L.P.A.

*/s/ Dawn M. Frick*_____
Dawn M. Frick (0069068)
Jeffrey C. Turner (0063154)
Justin R. Marks (0103811)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333, (937) 222-1970 (fax)
jturner@sdtlawyers.com
dfrick@sdtlawyers.com
jmarks@sdtlawyers.com
*Trial Attorneys for Tim Baird and Ross Township*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, a copy of which will automatically be forwarded to the parties or their counsel of record:

Jim Hardin
Joshua Adam Engel
Engel and Martin, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
engel@engelandmartin.com
*Attorneys for Plaintiff*

*/s/Dawn M. Frick*_____
Dawn M. Frick (0069068)