IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| MICHAEL REDDEN, | : | Case No. 1:24-cv-342 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| TIM BAIRD, et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 19). Plaintiff filed a Response in Opposition (Doc. 22), to which Defendants filed a Reply in Support (Doc. 23). Thus, this matter is ripe for review. For the following reasons, Defendants' Motion (Doc. 19) is **GRANTED**.

## FACTS

This case centers on Plaintiff Michael Redden's encounter with Defendant Tim Baird, a police officer for Defendant Ross Township. (Baird Dep., Doc. 16, Pg. ID 93.) On July 7, 2023, Bridget Langen, who shares a child with Plaintiff, met with Defendant Baird at the Ross Township Police Department to report a domestic violence incident. (*Id.* at Pg. ID 94.) Langen reported to Defendant Baird that she went to Plaintiff's home on Wagon Wheel Drive earlier that day to pick up the juvenile daughter they share. (*Id.*) She then stated to Defendant Baird that she was placing the child in her car when Plaintiff reached inside her car and took her cell phone. (*Id.* at Pg. ID 95.) Langen then chased after Plaintiff

to retrieve her phone while Plaintiff made derogatory comments and also claimed the phone was his. (*Id.*) Langen told Defendant Baird that she chased Plaintiff as he ran into his residence, pushing her out of the doorway as he slammed the door on her; she sustained injuries to her forearm and knee when he pushed her. (*Id.*) While Langen completed her written statement, Officer Baird contacted Plaintiff on the phone. (*Id.* at Pg. ID 89.) He then drove to Plaintiff's residence to continue his investigation. (*Id.*)

When Officer Baird arrived at Plaintiff's residence, Plaintiff informed Officer Baird that there was video footage of the incident, which he then provided to Officer Baird. (Baird Dep., Doc. 16, Pg. ID 105.) The video clips are all quite short and depict Langen chasing Plaintiff, Langen and Plaintiff shouting, Langen knocking on a neighbor's door to seek assistance, and Langen trying to force her way through the doorway and retrieve her phone while Plaintiff pushes her out. (*See* Baird Dep. Exs. 16-21; *see also* 9/12/2025 Notation Order; 9/16/2025 Notice of USB Received.) At one point during the videos, Plaintiff directs a derogatory comment at Langen. (*See* Baird Dep. Ex. 19.) During the investigation, Plaintiff informed Officer Baird that he owned Langen's phone. (Baird Dep., Doc. 16, Pg. ID 110.) Plaintiff also stated that Langen punched him and broke his television. (Plaintiff Dep., Doc. 18, Pg. ID 445.) Officer Baird testified that he did not recall asking Langen about this but did witness part of a television screen on the ground at Plaintiff's residence. (Baird Dep., Doc. 16, Pg. ID 97-98.) Officer Baird did, however, examine Plaintiff for visible injuries, but claims he found none. (*Id.* at Pg. ID 99-100.) After reviewing the footage and concluding his investigation, Officer Baird arrested Plaintiff and took him into custody. (*Id.* at Pg. ID 132.)

Plaintiff then spent four days in jail before his bench trial. (Plaintiff Dep., Doc. 18, Pg. ID 486.) While Plaintiff was convicted of domestic violence at trial, he appealed his conviction and the Twelfth District Court of Appeals reversed the trial court's decision, holding that his conviction at trial was not supported by sufficient evidence. *State v. Redden*, 238 N.E.3d 277, 280 (Ohio App. 12th Dist. 2024).

## PROCEDURAL POSTURE

Following his successful appeal, Plaintiff brought this present lawsuit against Defendants Ross Township and Officer Tim Baird. (Compl., Doc. 1.) Plaintiff brings two claims under 42 U.S.C. § 1983: a claim for false arrest and malicious prosecution against Officer Baird in violation of the Fourth Amendment and a claim for failure to train and supervise against Defendant Ross Township. (*Id.* at ¶¶ 29-46.) The parties engaged in a settlement conference with Chief Magistrate Judge Stephanie K. Bowman, but the matter remained at an impasse. (*See* 10/16/2025 Minutes.) Defendants filed a Motion for Summary Judgment (Doc. 19), which has been fully briefed. (*See* Docs. 22, 23.)

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

3

250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forth probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

Defendants assert that they are entitled to summary judgment on both of Plaintiff's claims because no genuine dispute of material fact exists on either of Plaintiff's claims. (Motion, Doc. 19, Pg. ID 542.) The Court addresses each claim in turn.

### I.      Count 1: False Arrest and Malicious Prosecution

Defendants argue that Plaintiff's first claim fails because Officer Baird established probable cause prior to Plaintiff's arrest. (Motion, Doc. 19, Pg. ID 543.) As Defendants point out, to prevail on a § 1983 false arrest claim, "a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff." (*Id.* (quoting *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020)) (cleaned up).) But, "[p]robable cause is not a high bar." (*Id.* (citing *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021)).) Importantly, Defendants note that "[c]ause to arrest does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." (*Id.* (quoting

4

*Adams v. Williams*, 407 U.S. 143, 149 (1972)).) And, a showing of probable cause "provides a complete defense to a claim of false arrest, even if the officer's belief of probable cause was erroneous." (*Id.* (quoting *Wood v. Eubanks*, 25 F.4th 414, 421 (6th Cir. 2022)).)

Defendants state that an officer is not liable for false arrest so long as there was probable cause for any offense, "even if not on the offense charged by the officer." (Motion, Doc. 19, Pg. ID 543 (collecting cases).) And, if an individual is later found innocent, this finding "does not preclude a finding of probable cause (*Id.* (citing *Fisher v. Jordan*, 91 F.4th 419, 425 (6th Cir. 2024)).) To this end, Defendants declare that Plaintiff erroneously works "backward from the time of his conviction was reversed" to show that Officer Baird lacked probable cause. Meanwhile, the facts of the case, as Defendants argue, show that, leading up to Plaintiff's arrest, Officer Baird: received a signed, written statement from Langen, observed injuries to her arm and knee, and reviewed videos showing them in an altercation, where Langen was on the ground, and where Langen sought assistance from a neighbor to call the police since Plaintiff had her phone. (*Id.* at Pg. ID 544.) Accordingly, Defendants contend that Baird correctly found "a probability or substantial chance of criminal activity." (*Id.* at Pg. ID 545 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).) To add to this point, Defendants note that Ohio Revised Code § 2935.03(B)(3)(a)(i) states that an officer "has reasonable grounds to believe that the offense of domestic violence has been committed […] if […] a person executes a written statement alleging that the person in question has committed the offense of domestic violence." (*Id.* (quoting Ohio Rev. Code § 2935.03(B)(3)(a)(i)).) And, "reasonable grounds" under that statute "equate[s] to probable cause." (*Id.* (quoting *State v. Gipp*, No.

5

29983, 2024 WL 1235456, at *6 (Ohio Ct. App. Mar. 22, 2024)).) Accordingly, to require further investigation would "ignore the preferred course of action" under the statute. (*Id.* (collecting cases).) Finally, Defendants point out that the Twelfth District overturned Plaintiff's conviction because of evidence presented at trial, not due to lack of probable cause at the time of arrest. (*Id.* at Pg. ID 546.)

In his Response, Plaintiff argues that probable cause did not exist when considering the totality of the information in Officer Baird's possession at the time of the arrest. (Response, Doc. 22, Pg. ID 808.) While Defendants note that an officer has no duty to conduct a further investigation after probable cause is established, Plaintiff points out that "police officers cannot cherry-pick facts in determining that probable cause exists." (*Id.* (quoting *Franklin v. Miami Univ.*, 214 F. App'x 509, 514 (6th Cir. 2007) (Clay, J. dissenting)).) In the Sixth Circuit, for instance, the court affirmed denial of summary judgment in a § 1983 case where the officers "possessed inculpatory and exculpatory evidence" during the investigation. (*Id.* (citing *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)).) In fact, as Plaintiffs state, in *Gardenhire*, the officer initially had probable cause but then obtained exculpatory evidence that changed the totality of the circumstances. (*Id.* (citing *Gardenhire*, 205 F.3d at 318; *Harris v. City of Saginaw*, 62 F.4th 1028 (6th Cir. 2023); *Logsdon v. Hains*, 492 F.3d 334, 343 (6th Cir. 2007)).)

Plaintiff compares *Gardenhire* to Officer Baird's investigation here. (Response, Doc. 22, Pg. ID 808.) Specifically, Plaintiff agrees that Langen's statement alone "may have been sufficient to establish probable cause"; however, Officer Baird then continued with the investigation by visiting Plaintiff and reviewing the videos. (*Id.* at Pg. ID 809-10, n.5.)

6

Importantly, Plaintiff states that Officer Baird never questioned Langen about Plaintiff's allegations that she hurt him, even though she mentioned it in her statement. (*Id.* at Pg. ID 811.) Thus, Plaintiff contends that a reasonable jury could look at the circumstances and conclude that Officer Baird only considered Plaintiff and not Langen as the primary aggressor. (*Id.* at Pg. ID 812.) In reality, Plaintiff argues, the video footage shows Langen as the primary aggressor, as she attempted to push her way into Plaintiff's home. (*Id.* at Pg. ID 813.) In their Reply, though, Defendants reiterate that probable cause is not a high bar, and courts should view the totality of the circumstances from the officer's perspective at the time of arrest, not in hindsight. (Reply, Doc. 23, Pg. ID 824-25 (collecting cases).) Furthermore, an officer can arrest an individual "so long as there is probable cause to arrest him for some crime," even if that crime is different than the stated crime of arrest. (*Id.* at Pg. ID 825 (quoting *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015)).)

According to Defendants, the totality of circumstances known to Officer Baird supports probable cause for a "litany of crimes." (Reply, Doc. 23, Pg. ID 826.) Specifically, Defendants note that Plaintiff admitted to taking Langen's phone, which is a crime under Ohio Revised Code § 2913.02(A)(1); although Plaintiff claimed it was his phone, he referred to the phone as "her phone" twice and stated that he gave her the phone. (*Id.*) Thus, Officer Baird knew of the theft when he arrived to the residence, and his interview of Plaintiff confirmed the theft. (*Id.*) Defendants also point out that Ohio law prohibits any person from tampering with the property of another; to this end, Defendants reiterate that Plaintiff reached into Langen's car to take her phone from its charger. (*Id.* at Pg. ID 827 (citing Ohio Rev. Code § 2909.07(A)(1)).) Again, Officer Baird knew of the phone's

7

removal when he responded to the residence, and Plaintiff confirmed that he took the phone from Langen's car. (*Id.*) Finally, Defendants point out that Ohio law prohibits domestic violence and Officer Baird observed, arrested, and charged Plaintiff for this offense. (*Id.*) Probable cause for this arrest was based on multiple factors: (1) Langen arrived to the police station to report the crime and appeared emotional and injured; (2) Langen completed a written statement describing the incident; (3) Officer Baird then went to Plaintiff's residence and observed video footage showing the dispute, which did not show the entirety of the dispute. (*Id.* at Pg. ID 827-28.) Defendants disagree that Officer Baird "cherry-picked" facts in making the arrest; rather, all of these facts are indeed the totality of the circumstances that, from Officer Baird's perception, created probable cause for the arrest. (*Id.* at Pg. ID 828-29.)

Additionally, Plaintiff argues that Defendants' reliance on the prosecutor finding probable cause is improper. (Response, Doc. 22, Pg. ID 813.) As Plaintiff notes, the prosecutor was not involved in the decision to arrest, and the "question of probable cause at the time of arrest is distinct temporally and legally from the sufficiency of evidence presented at trial." (*Id.* at Pg. ID 814, n.11.) Plaintiff next takes issue with Defendants' contention that Ohio's "preferred arrest" law inherently gave Officer Baird probable cause for arrest. (*Id.*) Plaintiff suggests that the law does nothing more than codify the constitutional requirement for probable cause for an arrest, applying those standards to the offense of domestic violence. (*Id.* (citing Ohio Rev. Code § 2935.03(B)(3)(b)).) In Plaintiff's view, the statute does not automatically render an arrest based on the statement constitutional, and since "actions under § 1983 concern violations of federal

8

rights, an officer's compliance with a state statute does not defeat a § 1983 action." (*Id.* (quoting *Denton v. Rievley*, No. 1:07-CV-211, 2008 WL 2857016, at *2 (E.D. Tenn. July 21, 2008), *aff'd*, 353 F. App'x 1 (6th Cir. 2009)).) Defendants refute this by pointing out that "courts normally look to state law defining the offense" when determining whether an officer had probable cause to make an arrest. (Reply, Doc. 23, Pg. ID 829 (collecting cases).) The statute in question, Ohio Revised Code § 2935.03(B)(3)(a), states that an officer has probable cause to arrest for domestic violence if a person executes a written statement alleging it. (*Id.*) Plaintiff continues by indicating that Defendants' cases are inapposite because none of them involved an officer who ignored exculpatory evidence or admissions from the accused. (Response, Doc. 22, Pg. ID 816, n.14.) But, Defendants retort that Plaintiff fails to point to any exculpatory evidence Officer Baird had at the time of the arrest, despite referring to it numerous times in his Response. (Reply, Doc. 23, Pg. ID 830.) And, Plaintiff has failed to challenge the validity of the statute itself; a written statement provides officers with probable cause in this context. (*Id.* at Pg. ID 831 (citing *White v. Roch*, No. 22239, 2005 WL 602684, at *3 (Ohio Ct. App. Mar. 16, 2005)).)

Lastly, while Defendants state that Plaintiff's assertion of self-defense at the scene shows an admission to the crime and thus established probable cause, Plaintiff notes that they fail to cite any authority in support of this contention. (Response, Doc. 22, Pg. ID 817.) Furthermore, the record does not show that Plaintiff claimed he acted in self-defense, except for the Complaint. (*Id.*) The Court agrees with Plaintiff that Defendants' self-defense argument is unavailing for this reason.

Nevertheless, the Court agrees with Defendants' contention that Officer Baird considered all evidence before him, and, given the totality of the circumstances, perceived that probable cause existed to arrest Plaintiff. As neither party disputes, Officer Baird could have arrested Plaintiff based on the written statement alone. *See* Ohio Rev. Code § 2935.03(B)(3)(a); *see also Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003). But the investigation did not stop there. Officer Baird's Investigation Report speaks better to his perception at the time of the arrest. First, Officer Baird reported that Langen came into the police station, "visibly distraught," and stated that Plaintiff "slammed the door on her," causing injuries to her forearm and knee. (Investigative Report, Doc. 18-2, Ex. 1.) Langen provided the written statement at this time. (*Id.*) Officer Baird then went to Plaintiff's residence to continue the investigation; there, Plaintiff did not dispute that he took Langen's phone or that they were in an argument. (*Id.*; *see also* Plaintiff Dep., Doc. 18, Pg. ID 513-14.) Plaintiff showed Officer Baird the video footage, which was incomplete, but portrayed: Plaintiff running into the street after taking the phone from Langen; Langen asking to call the police and seeking assistance from neighbors to do so; a heated verbal exchange between Langen and Plaintiff, where Langen asks Plaintiff and Plaintiff's other minor child to call the police; and Plaintiff pushing Langen out of his doorway while she was on the ground. (*Id.*) The Report goes on to state that Plaintiff admitted to taking Langen's phone, noting that he did buy it for her but had been letting her use it even after she moved out. (*Id.*) The Report notes that Mr. Redden had a scratch on his elbow and a "defensive bite mark" on his arm. (*Id.*)

10

In *Thacker*, the Sixth Circuit upheld summary judgment based on similar facts, finding that, while the victim's statement alone was sufficient for probable cause, assuming there was no statement, the totality of the circumstances still supported a finding of probable cause. *Thacker*, 328 F.3d at 247. Those circumstances included: the behavior of those involved, the state of disarray of the residence, the victim's visible injuries, and Ohio's preferred arrest policy. *Id.* Here, Officer Baird had the written statement, but he also had video footage corroborating Langen's story, admissions from Plaintiff that he did take her phone and they were in a fight, visible injuries on Langen along with a distraught demeanor, "defensive" injuries on Plaintiff, and, importantly, Ohio's preferred arrest policy. Accordingly, the Court finds no dispute of material fact exists here; Officer Baird had probable cause to arrest Plaintiff.

For similar reasons, Defendants contend that Plaintiff's malicious prosecution claim fails. (Motion, Doc. 19, Pg. ID 548.) For a § 1983 malicious prosecution claim, a plaintiff must prove: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, aside from the initial seizure; and (4) that the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). Defendants first argue that Plaintiff's claim fails on the first prong, as Officer Baird did nothing more than send a report to the prosecutor's office for misdemeanor charges. (Motion, Doc. 19, Pg. ID 549.) In other words, his initial investigation and paperwork do not constitute active involvement in

11

the prosecution. (*Id.*) Nevertheless, Defendants argue that Plaintiff's claim fails on the second prong as well, as Defendants established that Officer Baird had probable cause to arrest Plaintiff. (Motion, Doc. 19, Pg. ID 549.) Defendants therefore argue that they are entitled to summary judgment on Plaintiff's § 1983 malicious prosecution claim as well. (*Id.*)

Plaintiff, however, finds fault with this argument. (Response, Doc. 22, Pg. ID 818.) Plaintiff points out that a "malicious prosecution claim is viable where the charges were initiated by a defendant who made, influenced, or participated in the decision to prosecute," and here, Officer Baird "himself signed the criminal complaint that initiated the prosecution." (*Id.* (quoting *Sykes v. Anderson*, 625 F.3d 294, 316 (6th Cir. 2010)).) But, Defendants are correct to point out that "malicious prosecution rises or falls with the existence of probable cause." (Reply, Doc. 23, Pg. ID 833.) As the Court has established, Officer Baird had probable cause here. Furthermore, Defendants point out that "[f]iling a report and signing a complaint does not overcome passive and neutral participation," when a malicious prosecution claim requires more than mere passive participation. (*Id.* at Pg. ID 833-34 (citing *Day v. DeLong*, 358 F. Supp. 3d 687, 706 (S.D. Ohio 2019)).) And, testifying at trial can never be the basis of a malicious prosecution claim. (*Id.* at Pg. ID 834 (citing *Day*, 358 F. Supp. 3d at 706).) Defendants admit that Officer Baird filed a report, signed the complaint, and testified at trial, but none of this is enough to amount to malicious prosecution. (*Id.*) Plaintiff does not argue that Officer Baird did anything more than this, nor that he knowingly furnished false information to the prosecutor. The Court thus finds that a body of case law supports Defendants' argument. *See Kinkus v. Vill. of*

*Yorkville, Ohio*, 289 F. App'x 86, 91 (6th Cir. 2008); *Sykes*, 625 F.3d at 314 (an officer "will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials"); *Wilson v. City of Shaker Heights*, 741 F. App'x 312, 317 (6th Cir. 2018). Thus, for both a lack of active participation and the existence of probable cause, summary judgment is appropriate for Plaintiff's malicious prosecution claim.

\*        \*        \*

In sum, the Court finds that no dispute of material fact exists for either Plaintiff's false arrest or malicious prosecution claims. Defendants are entitled to summary judgment on Count 1 against Officer Baird.

## II. Count 2: Failure to Train and Supervise

Plaintiff's claim against Ross Township argues that the township is liable under 42 U.S.C. § 1983 for the actions of Officer Baird. (Compl., Doc. 1, ¶¶ 38-46.) In their Motion, however, Defendants contend that this claim must fail because there is no underlying constitutional violation. (Motion, Doc. 19, Pg. ID 549.) The Court first notes that, to prevail on a failure to train or supervise claim, the plaintiff must show that the municipality had a "policy or custom" that caused the violation of his rights. *Monell v. Dept. of Soc. Servs.*, 435 U.S. 658, 691 (1978). A plaintiff can prove a *Monell* claim, as it's called, in four ways: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828

13

(6th Cir. 2019) (citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Moreover, the plaintiff must show "a direct causal link between the custom and the constitutional deprivation; that is, [he] must show that the particular injury was incurred because of the execution of that policy." *Buehner v. City of Cleveland*, 788 F. Supp. 3d 827, 879 (N.D. Ohio 2025). Plaintiff supports his *Monell* claim with methods (1), (3) and (4) outlined above. (Compl., Doc. 1, Pg. ID 6-7.) The Court addresses each theory in turn.

Under the first theory, Plaintiff must show that "there were formal rules or understandings—often but not always committed to writing—that were intended to and did, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Jackson*, 925 F.3d at 829 (quoting *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)) (cleaned up). Defendants argue, though, that Plaintiff has failed to point "to a single policy that caused a violation of his rights." (Motion, Doc. 19, Pg. ID 550.) In fact, Defendants contend that the record speaks to the contrary: Officer Baird conducted his investigation pursuant to the police department's policy, which "exceeded that required by Ohio law to establish probable cause." (*Id.*) Plaintiff does not address this specific argument, nor attempt to point to a specific departmental policy that led to Plaintiff's alleged injury. (*See generally* Response, Doc. 22.) Accordingly, the Court agrees that Plaintiff's *Monell* claim fails under this theory.

Nevertheless, Plaintiff alleges that Ross Township's police department maintained a policy that failed to adequately train its officers. (Compl., Doc. 1, Pg. ID 6-7.) Importantly, a failure-to-train claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of

14

abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (cleaned up). According to Defendants, Plaintiff can only point to one such instance — "his arrest and subsequent prosecution, which is not indicative of a history of abuse." (Motion, Doc. 19, Pg. ID 551.) As Plaintiff points out, though, he "can rely on a single incident to establish liability in a narrow range of circumstances if the risk of the constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference for the municipality to fail to prepare its officers for it." (Response, Doc. 22, Pg. ID 819-20 (quoting *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023) (cleaned up)).) In one such case, Plaintiff argues, the city "failed to put on any evidence that it does in fact evaluate, review, or monitor the conduct its officers." (*Id.* at Pg. ID 820 (citing *Ouza v. City of Dearborn Hts.*, 969 F.3d 265, 287 (6th Cir. 2020)).) The court in *Ouza* found that "there was a factual dispute as to the municipality's deliberate indifference to its citizens' constitutional rights." (*Id.* (citing *Ouza*, 969 F.3d at 287).) Plaintiff argues that, here, "deliberate indifference can be shown by the fact that Baird operated with no supervision whatsoever," having "no idea" if his report was reviewed and never discussing the arrest decision with his supervisor. (*Id.*) The supervisor listed on the Investigation Report, Officer Rogers, testified that he was not involved in the case and never reviewed the reports or evidence. (*Id.*; *see also* Investigative Report, Doc. 16-5; Rogers Dep., Doc. 17, Pg. ID 248.)

Defendants dispute this argument by first pointing out that Chief Burton Roberts approved Officer Baird's report. (Reply, Doc. 23, Pg. ID 837; *see also* Rogers Dep., Doc. 17,

15

Pg. ID 248, 255.) Additionally, Officer Rogers testified that he "makes sure the officers are doing what they have been trained to do," including "speaking to the appropriate people involved" when there is a complaint of officer misconduct. (*Id.* (quoting Rogers Dep., Doc. 17, Pg. ID 243, 251-52) (cleaned up).) Defendants thus distinguish the circumstances here with those in *Ouza*, where such review and monitoring did not occur. (*Id.* (citing *Ouza*, 969 F.3d at 274).) Furthermore, Defendants note that, in *Ouza*, the arrested plaintiff was the victim of police misconduct twice in one night, the conduct in question was corroborated by a witness and the aggressor, and the prosecutor in that case declined to prosecute. (*Id.* (citing *generally Ouza* 969 F.3d 265).) Meanwhile, here, Defendants reiterate there was no formal complaint, the prosecutor pressed charges, and Officer Baird followed policy and Ohio law, so there was no reason for further review of his actions. (*Id.*) And, the Court agrees. The circumstances here do not fall within that "narrow range of circumstances" where the risk of a constitutional violation is so obvious that it renders the township recklessly indifferent. *See Howell*, 67 F.4th at 319. While Plaintiff claims that Officer Baird had "no idea" if his report was reviewed (*see* Response, Doc. 22, Pg. ID 287), Officer Rogers testified that it was reviewed by a supervisor. (Rogers Dep., Doc. 17, Pg. ID 248, 255.) This review included the supervisor examining the same evidence Officer Baird had before him when making the report, like the video footage. (*Id.* at Pg. ID 255.) Plaintiff has put forth no evidence that Ross Township was recklessly indifferent to the conduct of Officer Baird.

Finally, Defendants address Plaintiff's *Monell* theory of a custom of tolerance, which "requires a showing that there was a pattern of inadequately investigating similar

16

claims." (Motion, Doc. 19, Pg. ID 551 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989)).) Defendants point out that Plaintiff cites only his own case as a pattern, "which is no pattern at all," and does not put forth any similar claims for a custom-of-tolerance in the township. (*Id.*) Plaintiff fails to counter this argument. (*See generally* Response, Doc. 22.) Regardless, the Court finds that Defendants' reasoning is persuasive. The record is void of any evidence as to a pattern of tolerating inadequate investigations. Thus, even if a violation of law occurred here, "[o]ne alleged violation will not suffice; [Plaintiff] at a minimum must show multiple previous incidents of similar misconduct." *Cunningham v. Shelby Cnty.*, No. 24-5241, 2024 U.S. App. LEXIS 29430, at *4 (6th Cir. Nov. 19, 2024) (cleaned up). In sum, there is no dispute of material fact as to a failure-to-train or failure-to-supervise; the Court agrees that Defendants are entitled to summary judgment on Plaintiff's *Monell* claim against Ross Township.

## III.    Qualified Immunity

As an additional ground for their Motion, Defendants argue that Officer Baird is protected by qualified immunity. (Motion, Doc. 19, Pg. ID 552.) Qualified immunity is an affirmative defense that protects police officers from both liability and the lawsuit itself. *Greco v. Livingston*, 774 F.3d 1061, 1063 (6th Cir. 2014); *Smith v. City of Wyoming*, 821 F.3d 697, 708 (6th Cir. 2016). However, as no claims remain against Officer Baird, the Court finds it unnecessary to analyze this argument. Nevertheless, the Court briefly notes that a defendant is entitled to qualified immunity on summary judgment, "unless the fact, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror

17

to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013) (cleaned up). To this end, as the Court has established that Officer Baird had probable cause to make the arrest, Plaintiff cannot show that Officer Baird violated a constitutional right. Officer Baird is thus entitled to qualified immunity at this stage. *See id.*

### CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

1. Defendants' Motion for Summary Judgment (Doc. 19) is **GRANTED**;

2. Summary judgment is **ENTERED** in favor of Defendants on all claims; and

3. This case is hereby **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND